Argued January 9, petitioner suspended January 29, 1958

IN THE MATTER OF THE COMPLAINT AS TO THE CONDUCT OF
CLAUDE M. JOHNS, JR.

321 P. 2d 281

*Frank A. Bauman,* Portland, argued the cause and filed a brief for Oregon State Bar.

*John R. Gilbertson,* Portland, argued the cause and filed a brief for petitioner.

PER CURIAM.

This is a disbarment proceeding.

Petitioner, Claude M. Johns, an attorney of this court, was convicted on a plea of guilty in the United States District Court for the District of Oregon on two counts charging violation of § 145 (a), Title 26, USC, Internal Revenue Code of 1939, in that he willfully and knowingly failed to make income tax returns to the Director of Internal Revenue. The first count related to the income tax return required to be made before March 15, 1953, and the second to the return required to be made before March 15, 1954. As alleged in the information, his gross income for the year 1952 was $20,494.19, and for the year 1953, $21,842.06.

Based upon these facts and upon the petitioner's willful failure to file federal income tax returns "over a period of years prior to the year 1952," the Oregon State Bar instituted this proceeding.

A trial committee of the Bar heard testimony in the case, found that the charges were sustained by the evidence, and recommended that petitioner be suspended from the practice of law for a period of six months. Upon review the Board of Governors of the Oregon State Bar made similar findings, and recommended by a two-thirds vote that the petitioner be suspended for a period of three years. One member of the board voted for suspension for a period of six months and two for permanent disbarment. The matter is here upon the petition of Johns for review and modification of the decision and recommendation of the Board of Governors.

██ Violations of the Internal Revenue Act, for which he was convicted, are admitted by the petitioner. His conviction was proved. He further admits that during the five-year period, 1948 to 1952, he filed no federal income tax returns, although his gross income was sufficient in each of the years 1947 to 1951 to require such returns. In 1953 and 1954 he made application to the Internal Revenue Department for extensions of time to file returns for the previous years, but nevertheless failed to file such returns.

The federal court imposed a fine of $2,000 for the offense charged in Count 1 of the information and suspended the imposition of sentence on Count 2, releasing the defendant from custody on probation for a period of two years on that count upon the special condition that the defendant pay the proper amount of taxes assessed for the years 1952 and 1953, and upon the further condition that the said defendant refrain from the violation of any state or federal penal statute; that in all respects he conduct himself as a law-abiding citizen; that during said term of probation he submit to the authority and obey the instructions of the probation officer. The date of this judgment was June 8, 1956.

Thus, petitioner stands convicted of conduct calling for disciplinary action. *In re Means*, 207 Or 638, 298 P2d 983. The only question which requires consideration is how severe the penalty should be in order to vindicate the integrity of the legal profession and the courts and at the same time to deal fairly with the petitioner.

Mr. Johns is 46 years of age. He attended high school in Portland, graduated from the University

of Oregon with the degree of bachelor of arts, and from Willamette University School of Law with the degree of bachelor of laws. Thereafter he served in the armed forces of the United States for about four years, most of which he spent in the European theater. He was admitted to the bar in June of 1947. He is married and has two children. As his income for the years 1952 and 1953 indicates, he was prospering in his profession. Aside from the conduct involved in these charges, he has never been guilty of any dishonest or unethical practices.

When agents of the Internal Revenue Department first interviewed him about his failure to file income tax returns he admitted his delinquency and cooperated with them to the fullest extent. Among other things he turned over to the agents an office in his suite for their convenience in examining his books and records. Shortly after this investigation commenced, which was in January or February of 1955, he began to withdraw from the practice of law, and, according to an affidavit filed by him with this court on January 9, 1958, he had by that time ceased to practice law, has disassociated himself entirely from other lawyers, and was then employed exclusively as business manager and administrator of the affairs of one individual and of companies in which he is personally financially interested.

In his testimony before the trial committee Mr. Johns admitted that when he failed to file a return he knew that he was not complying with the law. He further testified that he was not under medical care at any of the time involved, but added "It was suggested at one time that I should be examined psychiatrist-wise, or something along that line, but some-

how I didn't think that was the proper thing to do."
Asked what was his reason for his failure to file re-
turns, he testified that he did not know. He swore:

> "Needless to say, the agents were astounded
> that anybody of normal intelligence would do or
> fail to do what I had failed to do, and their first
> assumption was that I was trying to get out of
> paying taxes, and that my intent was to defraud
> the Government, and believe me they made an
> intensive search along that line, and I have never
> seen their file but I know that they concluded that
> there was no fraud, and I was so advised by the
> attorneys in Washington, D. C."

In the *Means* case, which involved a similar of-
fense, we held that the attorney had violated his duty
to support the laws of the United States and suspended
him from the practice for a period of six months. As
here, Means had borne a good reputation, kept com-
plete records of his income, and cooperated with the
government in its investigation. In addition, serious
and protracted illnesses of Means and members of his
family were shown. It was the combination of these
mitigating circumstances that influenced the mild
penalty imposed in that case.

We did not intend by anything said in the *Means*
case to imply that an attorney who violates the internal
revenue laws is not liable to be disciplined unless he
does so with actual corrupt intent, nor do we think
the opinion to be susceptible to that interpretation.
We did say, "Not every violation of law by an attorney,
of course, is subject to disciplinary action by the court."
The distinction is pointed out in *In re Edmunson,*
103 Or 243, 204 P 619. This was a disbarment pro-
ceeding in which, among other things, the attorney
was charged with violating the prohibition law by

possessing and selling intoxicating liquor. The court said:

> "The possession of intoxicating liquor may be such as to constitute only a technical violation of the law, depending upon the circumstances and the purpose of such possession. These statutes [declaring causes for removal or suspension of an attorney] are not invoked to punish a technical offense, but the evidence shows that some of the crimes averred were deliberately committed. The libel committed by the defendant in the case at bar was a deliberate crime. His selling of intoxicating liquor was a premeditated offense."

In *Bartos v. United States District Court,* 19 F2d 722 (8th Cir), an attorney was accused of manufacturing beer in his home for the use of his family and guests. The United States District Court suspended him from practice for three years. On appeal the judgment was reversed. All three judges who sat in the case on appeal wrote opinions. Circuit Judge Kenyon and District Judge Trieber expressed the view that a reprimand from the court would have been sufficient punishment, but based their decision on the mitigating circumstances that the defendant had been advised by prohibition officers that they were not enforcing the part of the law relative to persons who had liquor in their own homes for their own use, and that it was a matter of common knowledge that many of the prohibition enforcement officers had given the public to understand that light beer could be manufactured in the home for consumption there, and that there would be no interference therewith. These judges refused to condone violation of law on the part of a member of the bar.

Violations of the statute here involved is a misdemeanor. In our opinion in the *Means* case we cited

*Rheb v. Bar Association of Baltimore City*, 186 Md 200, 45 A2d 289, where the court held that it is a misdemeanor involving moral turpitude. A more careful examination of the case of *Hargrove v. United States*, 67 F2d 820 (5th Cir), 90 ALR 1276, also cited in the *Means* case, leads to the same conclusion because the court there held that there could be no conviction under that statute unless the failure to file the return and pay the tax was with corrupt and criminal intent. *In re Burrus*, 364 Mo 22, 258 SW2d 625, cited on the argument, approved the holding of the Maryland court in the *Rheb* case and also this statement: "Such conduct might properly be characterized as fraud or deceit, even if it did not involve moral turpitude." In view of mitigating circumstances in the *Burrus* case, the court ordered suspension of the attorney for a period of one year.

Our statute includes as one of the grounds for removal or suspension of an attorney conviction of a felony or a misdemeanor involving moral turpitude. ORS 9.480 (1). We have held that before an attorney can be removed under this statute it must appear that he has been convicted of either a felony or misdemeanor as those terms are defined in our statute. *Ex parte Biggs*, 52 Or 433, 97 P 713. See, also, *In re Ankelis*, 164 Or 676, 681, 103 P2d 715. Provisions of the Oregon income tax law similar to the federal law which the petitioner was convicted of violating are contained in ORS 316.025 and ORS 316.990. In this case both the convictions themselves and the facts upon which the convictions were founded were admitted.

But, whether the offenses involve moral turpitude or not, they were violations of a federal statute designed to protect the federal revenues. This is a grave

matter in any case; the more so when the offender is a member of the bar. We quote with full approval the following from Judge Kenyon's opinion in the *Bartos* case, 19 F2d 730:

"When Bartos was admitted and enrolled in the United States District Court of Nebraska he took an oath that as an attorney and advocate of the District Court of the United States for that District he would demean himself uprightly and according to law, and that he would support the Constitution of the United States. That oath was not a mere gesture. He became an officer of the court. While every citizen is under obligation to support the Constitution and the laws of the United States, there is a difference between the obligations of an attorney in that respect and of the lay citizen. The attorney is given the right to practice in the court and to charge fees for his services. He stands as an exemplar of lawful conduct in his community. If he willfully violates the Constitution and the laws of his country, which as an officer of the court it is his special duty to support, he brings the administration of law and the courts into disrepute. He likewise fails to maintain the ethical standards of the bar and tends to bring the profession of the law into public distrust.

"Justice Bradley in Ex parte Wall, 107 U.S. 265, 274, 2 S. Ct. 569, 576 (27 L Ed. 552), says: 'Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, to trample them under foot, and to ignore the very bands of society, argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous elements of the body politic. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve.'"

The petitioner suggests no excuse such as illness, inadvertence, or the like for his repeated violations of

the law over a period of seven years. But his otherwise untarnished professional life, his voluntary withdrawal from the practice of the law, and his cooperation with the federal authorities come to his aid. Furthermore, it appears that it is unlikely that the federal government will not recover from him the full amount of his delinquent taxes.

In appraising the seriousness of the violation of the professional code in a case like this, we think that the court might well apply the test suggested by a law review article, namely, that it should be expressed, "in the extent to which, in the minds of those competent to judge, the act has lowered the prestige of the legal profession and rendered less efficient the administration of justice." John S. Bradway, "Moral Turpitude as the Criterion of Offenses that Justify Disbarment," 24 Cal L Rev 9, 23.

After due consideration of all the facts and circumstances of the case and the duty resting upon us to see to it, so far as lies in our power, that high standards of ethical conduct are maintained by the members of the bar, it is our opinion that it will serve the ends of justice if the petitioner is suspended from the practice of law for a period of one year and a half from the rendition of this decision.

It is so ordered.

McALLISTER, J., dissenting.

In my opinion, the recommendation of the Board of Governors that petitioner be suspended from the practice of law for a period of three years should be adopted by this court, and I therefore dissent from that portion of the opinion which imposes a lesser penalty.