[No. C. D. 2237. *En Banc.* July 3, 1958.]

*In the Matter of the Disciplinary Proceedings Against* JAMES J. MOLTHAN, *an Attorney at Law.*[1]

[1]Reported in 327 P. (2d) 427.

*T. M. Royce*, for board of governors.

*James J. Molthan, pro se.*

WEAVER, J.—The board of governors of the Washington state bar association presents to this court for final disposition its recommendation that respondent, James J. Molthan, be disbarred from the practice of law.

This disciplinary proceeding was commenced after respondent had pleaded *nolo contendere* in the United States district court for the western district of Washington to charges of willfully and knowingly failing to file a Federal income tax return for the calendar year 1951.

Respondent was committed to the custody of the United States attorney general for imprisonment for a period of six months and was fined five hundred dollars. Pursuant to Federal law for conviction of a misdemeanor, he was confined in the United States penal camp at McNeil Island, Washington.

The bar association stated two grounds of complaint against respondent: First, that he was convicted upon his plea of *nolo contendere*, as above identified; and second, that he

" . . . knowingly and wilfully failed and refused to file income tax returns [for] the years, 1949, 1950, and 1951, and has failed and refused to pay income taxes for the said years and subsequent years in violation of the revenue laws of the United States."

The trial committee (a member of the board of governors and two other lawyers) found:

(a) That respondent was convicted as we have described:

(b) That respondent had filed a United States Treasury form No. 1099 that disclosed the receipt of some twenty-one thousand dollars of income in 1951, but he refused to make or file an income tax return or pay any tax thereon;

(c) That for the years 1952, 1953, 1954, and 1955, respondent had filed income tax returns but had refused to pay tax thereon, except for the year 1955;

(d) That sometime during 1950, respondent notified the Treasury Department of the United States by letter that he was not going to file an income tax return nor pay any tax; that in 1951 respondent again notified the Treasury Department by letter of his intentions and invited prosecution;

(e) That respondent's purpose in notifying the tax authorities of his intentions was that

" . . . he maintained he was a second class citizen of the United States by virtue of the fact that he had been, without trial, denominated a security risk, and that such a finding denied to him his usual employment as an attorney."

The trial committee recommended:

"That since the actions of the respondent attorney complained of by the Bar Association did not involve moral turpitude the Trial Committee recommends against the imposing of any penalty amounting to suspension or disbarment. However, it is the opinion of the Trial Committee that the respondent's actions evidenced a lack of good judgment and a puerile or adolescent attitude, which is not to be commended; that respondent should be reprimanded in the manner and form provided by the Bar Act and By-Laws passed pursuant thereto, which reprimand, in the event of future conduct evidencing a lack of mature judgment, would, as a part of respondent's record, be used in evidence in the event other charges of unprofessional conduct are made against the respondent."

Section 145 (a) of the Internal Revenue Code (26 U. S. C. 1952 ed., § 145 (a)), under which Mr. Molthan was convicted, makes it a *misdemeanor*, punishable by a fine of not more than ten thousand dollars or imprisonment for not more than one year, or both, for any person, required by

law to make an income tax return or pay a tax, to willfully fail to make the return or pay the tax.

 The record is devoid of anything which indicates that Mr. Molthan entertained a corrupt or criminal motive. There is nothing to indicate that he intended to defraud or deceive the government. On the contrary, he notified the tax authorities of his intention; he kept adequate records; there is no complaint of lack of co-operation. Fraud or deceit are not inherent in his conduct, which the trial committee aptly described as evidencing "a lack of good judgment and a puerile or adolescent attitude." We agree with the conclusion of the trial committee that Mr. Molthan's conduct did not involve moral turpitude.

In this respect, the instant case differs from the factual pattern found in *In re Seijas, Jr., ante* p. 1, 318 P. (2d) 961 (1957), and *In re Kindschi, ante* p. 8, 319 P. (2d) 824 (1958). Mr. Seijas was convicted and Dr. Kindschi pleaded guilty to the charge of willfully attempting to evade a portion of their proper income tax by filing *false* and *fraudulent* income tax returns in violation of 26 U. S. C. 1952 ed., § 145 (b), which makes such violations a *felony*. Both cases hold that tax fraud involves moral turpitude.

 Rule for Discipline of Attorneys 10, 34A Wn. (2d) 183, provides that an attorney may be reprimanded, suspended, or disbarred for the reasons therein set forth. One need but examine the former opinions of this court to find that there is no fixed standard by which the result of a disciplinary proceeding can be determined. The action to be taken rests within the sound discretion of the court; it must be exercised with extreme care and caution to avoid its abuse. *In re Steinberg*, 44 Wn. (2d) 707, 715, 269 P. (2d) 970 (1954), and cases cited.

We find as wide a divergence of opinion in cases from other jurisdictions that involve analogous facts as there is in the instant case between the recommendation of the trial committee (reprimand) and the recommendation of the board of governors (disbarment).

In *Rheb v. Bar Ass'n of Baltimore*, 186 Md. 200, 202, 46 A. (2d) 289 (1946), the lawyer pleaded guilty to an indictment

charging him with willfully and knowingly failing to file income tax returns and failing to keep records in violation of 26 U. S. C. 1952 ed., § 145 (a). The bar association charged that he did so

" '. . . for the purpose of *deceiving* the Government of the United States of America and for the purpose of *defrauding* it of his known income tax liability.' " (Italics ours.)

The lawyer was disbarred. The value of this decision, as a guide in the instant case, is weakened by the factual distinction between the charges of the two bar associations, and the fact that a second reason (fraudulent sale of stock) for disbarment was found to exist.

In *In re Burrus*, 364 Mo. 22, 258 S. W. (2d) 625 (1953), the lawyer was suspended for one year. In *In re Means*, 207 Ore. 638, 298 P. (2d) 983 (1956), the lawyer was suspended for six months. The court found in the *Burrus* case that the

". . . admitted failure to keep adequate records, justify a finding that he deliberately failed to make returns or keep records for the purpose of cheating the Federal Government." (Italics ours.) (p. 24)

The *rationale* of the *Means* decision is that it is not " 'the act itself,' but '*the corrupt and criminal motive* with which the act was done,' " (italics ours) that makes the offense.

Both the *Burrus* and *Means* decisions are distinguishable from the instant case. There are no facts that would support a conclusion that Mr. Molthan's actions were for the "purpose of cheating the Federal government" or that he entertained "a corrupt and criminal motive."

In *Kentucky State Bar Ass'n v. McAfee* (Ky.), 301 S. W. (2d) 899 (1957), the respondent was convicted of willfully and knowingly failing to file an income tax return under 26 U. S. C. 1952 ed., § 145 (a). The court said:

"We conclude that respondent's conviction is not sufficient ground upon which to disbar Mr. McAfee from the practice of law in this State. But Mr. McAfee's conduct is not condoned by us and we think he should be, and he is hereby, reprimanded."

■ Respondent has represented himself well and ably before this court. His attitude was that of a man who realizes the seriousness of his offense. He admits the foolishness of his conduct. In no manner do we condone it. We censure and reprimand him for it; but we agree with his contention that disbarment is too drastic.

We conclude, therefore, that the ends of justice and the purpose of a proceeding of this kind will be best served by remanding this case to the board of governors, with instructions to reprimand respondent in accordance with the recommendation of the trial committee.

It is so ordered.

ALL CONCUR.

