[No. C. D. 2783. En Banc. January 31, 1963.]

*In the Matter of the Disciplinary Proceeding Against* RICHARD R. GREINER, *an Attorney at Law.**

ROSELLINI, HAMILTON, and HUNTER, JJ., dissent.

*T. M. Royce,* for Board of Governors.

*Reported in 378 P. (2d) 456.

OTT, C. J.—Richard R. Greiner was admitted to practice law in the State of Washington March 31, 1942. The Hearing Panel and the Board of Governors of the Washington State Bar Association will hereinafter be referred to as the panel and the board, respectively. A formal complaint, dated November 29, 1961, charged Mr. Greiner with violation of the rules of professional conduct as follows:

"(1) During each of the calendar years 1954 to 1958 inclusive, Richard Greiner had and received gross income in such amounts that by reason thereof he was required by law, after the close of each of such calendar years to make an income tax return to the Director of Internal Revenue, at Tacoma, Washington, in the manner and form required by law, and Mr. Greiner wilfully and knowingly failed to make an income tax return for any of said years, in violation of the Internal Revenue Code of the United States.

"(2) On February 15, 1961, Mr. Greiner was charged by information filed in the United States District Court for the Western District of Washington, Southern Division, containing five counts, with failure to file income tax returns for each of said years 1954 to 1958 inclusive; a copy of such information is hereto attached, marked Exhibit A, and made a part hereof.

"(3) On March 9, 1961, Mr. Greiner entered a plea of guilty to counts one and two of such information.

"(4) On the 9th day of March, 1961, judgment was entered upon Mr. Greiner's plea of guilty to Counts one and two that he was guilty as charged and he was sentenced to imprisonment for a period of three months on each count, to be served concurrently, and to pay a fine of five hundred dollars. A copy of the judgment and sentence is hereto attached, marked Exhibit B and made a part hereof.

"WHEREFORE it is prayed that a hearing be had upon this formal complaint by a Hearing Panel, in the manner as is provided by the rules of discipline of attorneys adopted by the Supreme Court of the State of Washington, and that such disposition be made as is warranted by the facts and the law."

Mr. Greiner's answer alleged:

"Answering the formal complaint herein, Richard Greiner admits the allegations thereof.

"Further answering, and by way of mitigation, but not

in excuse or justification, Mr. Greiner states the fact to be that the first year for which he omitted to file his Federal income tax return, which was for the year 1952, and just prior to and at the date such return was due, he did not have the money to pay his tax; that thereafter personal living expenses for himself and his family consumed all of his income; and, as time went along, he became afraid to file returns and expose his prior omissions; that he was always conscious of his failure to comply with his obligation to his Government and was in constant fear of being called upon by the Internal Revenue Service.

"That at the time the Internal Revenue Agents first began to question Mr. Greiner, and thereafter, he made full disclosure of all facts in his possession and stated to them that he was willing and able to borrow whatever money was necessary to pay his tax, with interest and penalties, in full.

"That at no time did he intend to defraud the Government, and that his continued failure to file was due solely to his inability to pay the accumulated tax and his fear of exposure and the penalties attendant thereon."

At the disciplinary proceeding before the panel, the bar association was represented by its attorney, and Mr. Greiner appeared in person and with counsel. The panel entered findings of fact establishing the tax violations, the conviction and sentence, and, in addition thereto, found the following mitigating circumstances:

"(5) When said Richard R. Greiner's income tax return and income tax for 1952 was due he did not have the money to pay the tax, and so he did not file his return for that year. Thereafter he was afraid to go to the income tax officials and admit his derelictions because of the public ridicule that he thought would ensue. As each subsequent year went by, the tax deficiencies became larger and Mr. Greiner's fear of the exposure of his prior omissions became greater, but he did nothing about it. Finally, in about 1959 or 1960, he was questioned by agents of the United States Internal Revenue Service, and he then made full disclosure to them of his derelictions. . . . Said agents have also informed Mr. Greiner that the income taxes due from him and his wife, exclusive of interest and penalties, amount to $7,212.58 for said seven years. Said taxes have not been paid because (a) Mr. Greiner has not had the money to pay them and (b) the Internal Revenue Service has not yet billed Mr. Greiner for them.

"(6) Said Richard R. Greiner has duly and timely filed income tax returns for the years 1959, 1960 and 1961 and has paid in full the taxes shown thereby to be due.

"(7) Said Richard R. Greiner is 44 years old, is married, and has four minor children. He appears to be well regarded in Yakima County, both as a man and as a lawyer, as evidenced by the 15 letters received in evidence as Exhibit 5. He was frank and open with the Hearing Panel and has an excellent attitude about the past and the future and his duty to the public."

The panel recommended that Mr. Greiner be suspended from the practice of law for 30 days. Mr. Greiner filed with the board a written statement in opposition to the discipline recommended by the panel, and requested the board to reduce it to reprimand or censure. The board considered his objections and reviewed the record. A majority of the members of the board approved the findings and recommendation of the panel. Two members dissented and recommended that the charges be dismissed.

At the hearing before this court, counsel for Mr. Greiner urged that the facts and circumstances warranted only reprimand or censure.

This proceeding involves a single question: After an attorney is convicted, fined, and incarcerated in a federal prison for failing to file income tax returns, what discipline should be imposed?

The Rules for Discipline of Attorneys authorize this court to censure, reprimand, suspend or disbar an attorney for violation of the rules of professional conduct. Rule for Discipline of Attorneys 1, RCW Vol. 0. The disciplinary action in a specific case is determined by its facts and circumstances. The discipline to be imposed rests within the sound discretion of this court. *In re Molthan,* 52 Wn. (2d) 560, 327 P. (2d) 427 (1958); *In re Steinberg,* 44 Wn. (2d) 707, 269 P. (2d) 970 (1954). We have, on three occasions, determined what discipline should be imposed upon an attorney who has been convicted and imprisoned for a violation of federal income tax laws.

*In re Seijas,* 52 Wn. (2d) 1, 318 P. (2d) 961 (1957), involved an attorney's conviction on a charge of wilfully

attempting to evade a portion of his proper income tax by filing a false and fraudulent return which, under the provisions of the Internal Revenue Code, was a felony. We held that the filing of a fraudulent return involved moral turpitude and warranted disbarment.

In *In re Molthan, supra,* the attorney was charged with wilfully and knowingly refusing to file income tax returns which, under federal law, is a misdemeanor. He was imprisoned for six months and paid a fine of $500. His evidence, in the disciplinary proceeding, disclosed that he had filed income tax returns, but, by letter, had advised the Treasury Department why he did not intend to pay the tax. In considering this evidence, we stated [p. 564]:

" . . . There are no facts that would support a conclusion that Mr. Molthan's actions were for the 'purpose of cheating the Federal government' or that he entertained 'a corrupt and criminal motive.' "

The court's order of reprimand was predicated upon the lack of any evidence of wilful concealment or dishonesty.

In *In re Case,* 59 Wn. (2d) 181, 367 P. (2d) 121 (1961), the attorney was fined and imprisoned for 4 months upon a federal charge of failure to file income tax returns for the years 1954 and 1955. The grounds upon which discipline was sought were as follows: (1) His failure to file federal income tax returns for the years 1949, 1950, 1952, and 1953, (2) his conviction and imprisonment for failure to file returns for the years 1954 and 1955, and (3) his reprimand on February 11, 1957, for unprofessional conduct in the administration of an estate. His defense to the charge of failure to file returns was inattention, carelessness, and lack of criminal intent. The panel found this contention to be incredible and untrue. Six months' suspension, recommended by the panel and the board, was ordered by this court for the reason that the attorney's conduct involved dishonesty and a disregard for the law, in violation of his oath as attorney and of Canons of Professional Ethics 29 and 32.

Mr. Greiner contends that suspension is not warranted in his case because

"In almost every case of professional discipline where suspension or disbarment was inflicted, the persons involved were invariably of somewhat unsavory character and reputation. There were other things connected with them in addition to the immediate cause of Bar action—overtones of *dishonesty*, trickery, fraud, slovenliness, neglect, previous reprimands, and the like. *No such incidents or involvements are present in this case.*" (Italics ours.)

The above statement implies that there is no incident of "dishonesty" involved in this proceeding. However, Mr. Greiner's conduct of knowingly and intentionally failing to file income tax returns for a period of 8 years did involve dishonesty and disregard for the law. *In re Case, supra.* His stated reasons for failing to file returns were that, in 1952, he did not have the money; that "thereafter personal living expenses for himself and his family consumed all of his income," and that, during these years, he lived in fear of being exposed for his omissions. These reasons do not constitute justification for his 8 years of misconduct.

Mr. Greiner further contends that his conduct as a practicing attorney has never before been subject to criticism or discipline; that residents in his community have vouched for his legal ability and character, evidenced by 15 letters from lawyers, a superior court judge, the sheriff, and other county and municipal officers; that he has co-operated with both the federal authorities and the bar association and has agreed to make restitution of the tax liability; that he has now resumed the practice of law, and that, therefore, a suspension is not warranted.

All of the above factors are circumstances to be considered in determining the discipline to be imposed, but they do not remove the stigma upon the legal profession for his 8 years of dishonesty and failure to observe the law.

In *Ford's Case,* 102 N. H. 24, 25, 149 A. (2d) 863 (1959), the Supreme Court of New Hampshire, after considering similar facts, said:

". . . there is no evidence that the defendant has breached any of his professional duties to clients or has been guilty of other wrongdoing. His professional life has been exemplary and unmarred except for this offense.

. . .

"However, the defendant's actions cannot be condoned even though they do not involve moral turpitude and were prompted by financial fear rather than fraudulent intent. In this case it is believed that censure or reprimand is insufficient; that disbarment is unwarranted; but that suspension for a definite period is warranted as a clear indication that such conduct is not to be disregarded by the bar or by this court."

In *In re McKechnie,* 214 Ore. 531, 330 P. (2d) 727 (1958), a disciplinary proceeding involving failure to file income tax returns, the Supreme Court of Oregon ordered suspension because the conduct of the attorney exposed the profession and the courts to ridicule and contempt. In this regard, the court stated [p. 534]:

"Under all of the circumstances disclosed by the record, it might be possible to say that the trouble and worries which have plagued this young man through his failure to make the return should be sufficient punishment for his error, but punishment is not the basis of disciplinary action; such action rests upon the fundamental principle that conduct which exposes the profession and the courts to ridicule or contempt must be curbed lest it lead to a breaking down of the efficient administration of justice. Viewed in the light of this purpose, the conduct of the petitioner is such as to lead us to the conclusion that the recommendation of the Board of Bar Governors [suspension for six months] should be approved."

In *State ex rel. Nebraska State Bar Ass'n v. Fitzgerald,* 165 Neb. 212, 219, 85 N. W. (2d) 323 (1957), a disciplinary proceeding involving an attorney who failed to file income tax returns for a period of 8 years, the court said:

"The evidence shows that respondent has been fully co-operating with those in charge of the Internal Revenue

Service in an endeavor to ascertain the correct amount of tax he owes for the years involved and that he intends to pay the full amount thereof, together with penalties and interest assessed against him, when that amount has been established. There is no evidence before us that respondent has ever breached his duty as a lawyer nor is there any evidence that he has ever been guilty of any other wrongdoing as a private citizen.

"In view of the facts herein set forth, and all the circumstances disclosed by the record relating thereto, we think the ends of justice will be properly served by suspending respondent from the further practice of law, . . ."

See, also, 59 A. L. R. (2d) 1398; *In re Corcoran,* 215 Ore. 660, 337 P. (2d) 307 (1959); *In re Morris,* 215 Ore. 180, 332 P. (2d) 885 (1958); *In re Johns,* 212 Ore. 587, 321 P. (2d) 281 (1958); *In re Wagner,* 210 Ore. 457, 311 P. (2d) 751 (1957); *In re Means,* 207 Ore. 638, 298 P. (2d) 983 (1956); *In re Burrus,* 364 Mo. 22, 258 S. W. (2d) 625 (1953).

 Our examination of the decisions of other jurisdictions discloses that the great weight of authority, and what we consider to be the best-reasoned opinions, support the suspension of an attorney's privilege to practice law, upon his conviction and sentence for wilfully failing to file federal income tax returns. There is no uniformity as to the term of the suspension.

In *In re Case, supra,* we adopted this rationale, stating that the discipline of suspension imposed was not primarily

" . . . to punish the offender, but to curb disrespect for the profession, to maintain its honor and dignity, and to assure those who seek the services of an attorney that conduct of dishonesty and lawlessness will not be tolerated."

 To accomplish these purposes, Richard R. Greiner is suspended from the practice of law for a period of 90 days, to begin 60 days from the date when this opinion is filed.

HILL, DONWORTH, FINLEY, and WEAVER, JJ., concur.

ROSELLINI, J. (dissenting)—This case involves the question: What discipline should be imposed for an attorney

who has been convicted of failure to file income tax returns?

Whenever a court is called upon to take disciplinary action, there are divergent opinions as to what that action should be.

In 10 states where courts have considered the question of discipline for attorneys who failed to file federal income tax returns, the results vary from censure to disbarment.

It has been held that where an attorney fails to file a return and is convicted of this offense, moral turpitude is involved; that moral turpitude is not involved; and that it makes no difference whether it is involved or not.

This case reveals a similar diversity of opinion. The administrative committee is composed of three members; two members concluded that moral turpitude was not in fact an element of the crime, while one member was of the opinion that it was.

The Board of Governors is composed of seven members. The majority concluded that "moral turpitude was not in fact an element of the above stated crime committed by said Richard R. Greiner."

The majority of the board recommended to the Supreme Court that Mr. Greiner be suspended from the practice of law for a period of 30 days; two members of the board recommend that the proceeding should be dismissed.

The majority of this court has arrived at a different conclusion, and decrees that Mr. Greiner shall be suspended for a period of 90 days.

A portion of the dissenting opinion of two members of the Board of Governors is illuminating:

"The majority of the Board of Governors felt that they were bound by the decision of the Supreme Court in the matter of the disciplinary proceeding against Edson M. Case, an attorney at law, 159 Wash. Dec. 193, which involved a similar situation and in which the suspension of Mr. Case for a period of six months was approved by the Supreme Court. The undersigned disagree with this conclusion and do not believe that it was the intention of the Supreme Court to hold that an attorney must be suspended from

the practice of law in the event he fails to file an income tax return and is subsequently found guilty thereof by a court of competent jurisdiction. Were this to be the rule, the undersigned believe that it should be clearly so stated and that the Rules of Discipline should be changed so that the formality of the trial would be obviated. It seems apparent that if the Case decision is to be so interpreted, automatic suspension follows and a trial serves no useful purpose.

"The undersigned believe that the decision in the Edson Case matter turns, to a large extent, upon the conclusion cited therein (which is amply supported by the record) that 'Respondent's explanation of his failure to file income tax returns is incredible . . .'

"Under the Rules of Discipline (Rule 1), discipline is appropriate where an attorney commits an act 'involving moral turpitude, dishonesty or corruption . . .' In the decision in the Edson Case matter, the Supreme Court by italicizing the word 'dishonesty' clearly indicates that 'Respondent's explanation of his failure to file income tax returns is incredible' is a factor in the final determination. In other words, where an attorney commits a criminal offense which does not involve moral turpitude but, thereafter, gives an incredible explanation of his commission of the crime there is necessarily dishonesty involved and under the rule the attorney should be disciplined. There are, of course, other cases where the same factual situation should result in disciplinary action as where the attorney's explanation is at least not wholly honest and he has previously been disciplined for unethical conduct.

"The undersigned believe that each case must properly stand on its own feet and that the Greiner case is distinguishable from the Edson Case matter.

"The hearing panel (whose Findings are approved unanimously by the Board of Governors) noted that there was no evidence or inference from the evidence that Mr. Greiner intended to defraud the government or ever formed an intent, in the malevolent sense, to defraud the United States. The record is replete with evidence that Mr. Greiner is a person of excellent character and that his continued practice of the law will not be detrimental to the public or the reputation of the Bar.

"The purpose of a disciplinary proceeding is not to punish an offender for the commission of a criminal offense since that is properly left to the appropriate authorities. The punitive effect of discipline is a necessary consequence but

is not the purpose. The undersigned believe that since there was no moral turpitude involved, no dishonesty and no corruption, the above entitled proceeding should be dismissed and further believes that if the pure unadorned fact that an attorney has been convicted of failing to file an income tax return requires suspension the Rules of Discipline should be changed so to provide and to avoid the extensive waste of time and energy involved in a trial in a disciplinary proceeding."

The failure to file an income tax return is a misdemeanor. U.S.C., title 26, § 7203. The record shows that Mr. Greiner believed that his tax liability, with interest and penalties, would be approximately $11,000. He has offered to sell his home and pay the tax. His home would realize $15,000 to $16,000. He owes approximately $6,000 on it.

The findings of fact disclose that Richard Greiner is 44 years old, is married, and has four minor children. He appears to be well-regarded in Yakima County, both as a man and as a lawyer, as evidenced by 15 letters received in evidence as exhibit No. 5. He was frank and open with the hearing panel, and has an excellent attitude about the past and future and his duty to the public.

Upon his return to Yakima after having paid the fine and served the sentence, he did not immediately resume the practice of law, but called the Bar Association office in Seattle to ascertain what he might expect in the way of any disciplinary procedures or action. He was advised that there was nothing "over there" and that nothing would be done unless some complaint was made on the local level, meaning the local bar at Yakima or the board member from the Fourth Congressional District. Local inquiries along this line were made on his behalf, and only after receiving information which indicated that no local action would be taken did he lease a new office and begin his practice anew. He did not seek to evade disciplinary proceedings, but voluntarily approached the Washington State Bar Association with reference thereto prior to the institution of any proceedings against him. He thus voluntarily abstained from practice from the end of May to July 15, 1961.

Under these circumstances, the cogency of the recommendation of the dissenting members of the Board of Governors becomes apparent. Each case should be decided upon its own merits. In *In re Molthan*, 52 Wn. (2d) 560, 327 P. (2d) 427, where the respondent was convicted of violating the same federal statute, this court reprimanded the attorney, stating:

"Respondent has represented himself well and ably before this court. His attitude was that of a man who realizes the seriousness of his offense. He admits the foolishness of his conduct. In no manner do we condone it. We censure and reprimand him for it . . . "

In *In re Mahon*, 15 App. Div. (2d) 232, 223 N. Y. S. (2d) 338, because of a delay in the disciplinary proceedings, the court censured the lawyer, who was convicted of failing to file an income tax return.

There is a more compelling reason why the relator should not be suspended. The purposes of all disciplinary actions are to protect the public and to deter lawyers from engaging in unprofessional conduct. Of the two, protection of the public is of the highest consideration. When the Bar Association informed the respondent that there would be no disciplinary action taken against him, it in fact permitted him to engage in the practice of law and made it possible for him to represent to the public that his legal services would be obtainable in the future.

His clients now must seek a new lawyer to represent them. All of the litigants who are involved with the respondent's clients will be affected, and in many cases delayed in settling their legal problems with respondent's clients.

In a situation such as this, respondent's clients may well suffer pecuniary losses because of the fact that they must hire a new attorney.

The innocent client caught in such a web certainly will lose confidence in a legal profession that permits such a situation to develop. The image of the legal profession thus becomes unnecessarily tarnished. To permit an attorney

to become re-established and to hold out to the public that he may represent clients, and then to suspend him, imposes upon his clients such a detriment as to bring disrespect upon the profession.

There appears to be no relation between the act of discipline and the evil which is attempted to be prevented. It seems to be a blind desire to obtain a pound of flesh for a wrong committed. It gives credence to the line found in Oliver Twist: "If the law supposes that," said Mr. Bumble " . . . the law is a ass—a idiot."

If the rule is to be that adopted by the majority, that the conviction of an attorney for a failure to file an income tax return results in automatic suspension, then it behooves the state bar and this court to adopt a further rule that upon the lawyer's release from prison, he will be immediately suspended and will not be permitted to re-engage in the practice of law until his suspension has been served. This would protect innocent members of the public from the inconvenience, delay, and expense occasioned when the attorney they have hired has his right to practice law suspended. Such a rule would prevent the present girlish psychasthenia in approaching disciplinary matters.

The rule which I propose would aid in obtaining for the profession the respect, honor, and dignity which it deserves, and at the same time protect the welfare of the public who must deal with members of the bar.

To suspend the respondent after a year and a half of practice and after he has established himself, does not protect the public nor uphold the honor and dignity of the profession. The image of the legal profession is better served if equality of justice becomes its standard. Thus, I would follow the case of *In re Molthan, supra,* and reprimand the respondent.

HAMILTON, J. (dissenting)—Under the circumstances revealed in this record, I would adopt the majority recommendation of the Board of Governors.

HUNTER, J., concurs with HAMILTON, J.