[No. C. D. 2216.   En Banc.   March 1, 1963.]

*In the Matter of the Disciplinary Proceeding Against* JOHN CAUGHLAN, *an Attorney at Law.**

*Reported in 379 P. (2d) 189.

*T. M. Royce,* for Board of Governors.

HALE, J.—This is a disciplinary proceeding brought under the Rules for Discipline of Attorneys, RCW Vol. 0. Involved are Canon of Professional Ethics 29, RCW Vol. 0, relating to upholding the honor and dignity of the profession, and Canon of Professional Ethics 32, RCW Vol. 0, which requires a lawyer to observe, *inter alia,* the statute law.

Respondent John Caughlan was admitted to the bar of Washington in 1936, and, at the time the complaint was filed here, was actively engaged in practice in Seattle. On January 29, 1962, following trial and verdict of a jury, respondent was convicted in the United States District Court of wilfully failing to file income tax returns for the years 1955 and 1956. He was sentenced to 8 months imprisonment on each count, the sentences to run concurrently, and to pay a fine of $1,000. Appeal was taken by Mr. Caughlan to the Court of Appeals for the Ninth Circuit, but thereafter, he undertook to dismiss the same. While the appeal on the tax matter was in process of dismissal, hearing was had on the disciplinary complaint before a trial committee designated by the Board of Governors of the Washington State Bar Association, and the case is now under review.

The record of evidence before the trial committee shows that respondent has been an active and vigorous practitioner at the bar; that he has handled innumerable matters of importance and complexity; that he has had an extensive appellate practice involving more than one appeal to the Supreme Court of the United States; and that he is a thoroughly trained and experienced practicing attorney. His remuneration from such heightened activity has been singularly modest, and this was attributed, both by the respondent and the trial committee, to the fact that, throughout his career at the bar, the respondent has undertaken to represent numerous clients and associations having little or no funds with which to litigate. We think these

matters were given full consideration by both the trial committee and the board in assessing their final judgment in the case.

The record of evidence also demonstrates that respondent kept and maintained in his office accurate books of double-entry account, which books were available at all times to the Internal Revenue Service for inspection; and that respondent, throughout his career at the bar has been diligent in his practice and trustworthy in his relations with his clients and with other attorneys, and is held to be a lawyer of ability by his associates in the profession. Several attorneys of excellent standing testified to respondent's high ethical and professional standards.

The trial committee found that Mr. Caughlan's failure to file tax returns for the years 1955 and 1956 was wilful and knowing in the sense that he was fully aware of his obligation under the Internal Revenue Code of the United States.

Respondent, while not seeking to excuse his oversight and failure to file, points out, nevertheless, that the deadline caught him at a period of time when he was under great stress and under the pressure of exceptional activity in his office, occasioned by his handling alone several legal matters of substantial magnitude. Both the trial committee and the Board of Governors found that at no time in connection with his delinquencies in filing the returns and in payment of the income tax due did Mr. Caughlan intend to evade the payment of taxes or to defeat or defraud the United States in any way. From the extensive evidence submitted to describe respondent's career at the bar and his violations of the Internal Revenue Code, the trial committee and the board made the following conclusions, among other things: Respondent failed to uphold the honor and maintain the dignity of the profession in that he knowingly failed to observe the statute laws governing his conduct, but that said conduct did not involve moral turpitude, dishonesty or corruption. The trial panel recommended that respondent be suspended from the practice of law in the state of Washington for a period of 30 days.

Respondent concurs in both the findings and conclusions

of the trial committee and the Board of Governors, and implies that a suspension is warranted in the premises. He applies, however, for a retroactive application of the suspension from the practice of law so that the suspension will coincide with a part of the time respondent is in custody, and thus leave him free to argue an appeal in a case now pending before this court, set to be argued shortly after respondent is released. He points out that, if he cannot argue the appeal, in effect his clients are being deprived of counsel of their choice, and that the very persons sought to be protected by the disciplinary proceedings will be hurt by them.

■ This court has aligned itself with a number of jurisdictions which hold that wilful failure to file income tax returns—even though done without intent or purpose to cheat or deceive the government—does, nevertheless, constitute violation of the Canons of Professional Ethics which require attorneys at the bar to uphold and maintain the dignity of the profession, to observe the statute law, and to advise their clients to do likewise (unless, of course, there are legitimate grounds to challenge the validity of the statute involved).

In *In re Molthan*, 52 Wn. (2d) 560, 327 P. (2d) 427, an attorney was reprimanded by this court upon his conviction on one count of failing to file an income tax return. The attorney was imprisoned for 6 months in a road camp. In the *Molthan* case, it was demonstrated that, in effect, the attorney had issued an ultimatum to the government by deliberately inviting prosecution on the grounds that on a different occasion the government had, without trial, designated him a security risk. In a later case, this court imposed a more drastic remedy in suspending an attorney from practice for 6 months upon a conviction of two counts of failing to file an income tax return for the years 1954 and 1955, which conviction was followed by a sentence of 4 months in prison. *In re Case,* 59 Wn. (2d) 181, 367 P. (2d) 121. Attention is called, also, to *In re Greiner, ante* p. 306, 378 P. (2d) 456, in which conviction on two counts of wilful failure to file income tax returns,

succeeded by a sentence of imprisonment of 3 months on each count and the imposition of a $500 fine, was, in turn, followed by suspension from practice by this court for a period of 90 days.

In the *Greiner* case, this court increased the period of suspension from the 30 days recommended by the Board of Governors to 90 days. This increase was based largely on considerations that the attorney had wilfully failed to file tax returns for a period of 8 years; that he was informed against in eight counts but permitted to plead guilty to two counts only; and that evidence was developed at the hearing before the trial committee showing a definite delinquency on the part of the attorney for eight separate years.

In the case at bar, although the attorney was tardy in filing his returns for other years, and sometimes did so under extensions allowed by the Internal Revenue Service, the wilful failure to file can be said to have occurred only during the years covered by the information.

In determining the period of suspension, if any is indicated, for wilful failure to file income tax returns, each case is to a marked degree *sui generis,* involving as it does differences in the age, health, experience, knowledge of statute law on the part of the attorney, and the differences in circumstances inevitably occurring in each case, such as the delay involved in the filing, the extent of the delinquencies, the amount of the income upon which a filing should be made, and all of the other multifarious factors considered by the bar and the courts as having a direct bearing on the question of professional discipline. Thus, while the period of suspension for the same offense ought not to differ widely, there should be a latitude—well defined though it must be—within which different periods of suspension may be imposed depending upon cogent differences in the circumstances hereinabove alluded to.

The record discloses here a novel but commendable departure from preceding cases. Having elected to dismiss his appeal from the judgment of conviction, respond-

ent thereafter did everything possible to cooperate with the bar association in expediting the disciplinary proceedings. The association's formal complaint was dated July 10, 1962. Respondent promptly filed his answer dated July 20, 1962. Hearing was held August 10, 1962, by a trial committee. On August 31, 1962, respondent filed a declaration in writing in which he accepted the findings, conclusions and recommendations of the trial committee. Thus, from the time the complaint was filed against him until final conclusion at the trial level, little more than 6 weeks elapsed. He commenced service of his sentence of imprisonment on August 31, 1962, and anticipates his release from custody about March 1, 1963.

Speedy handling of this disciplinary proceeding by the bar and respondent, once it had commenced, enables this court to apply a principle of law which, we think, has long been needed. When an attorney suffers imprisonment for a public offense under circumstances where it is likely that suspension from practice will ensue, the period of suspension imposed ought to be continuous to the period of imprisonment; that is to say, it should, in effect, be added to the imprisonment. When the attorney is released from custody, he should immediately commence his suspension, so that neither he nor his clients will experience the inconvenience and hardship necessarily arising from an interruption of his practice at a later date. Because of the delays which have inevitably arisen, perhaps unavoidably so in earlier cases, involving failure to file income tax returns, we have the rather curious anomaly of the attorney, upon being released from custody, undertaking the immediate practice of law, preparing cases for trial, interviewing clients, picking up the threads of an interrupted practice, and then, at a substantial period of time later, being compelled to interrupt his own affairs, and more importantly those of his clients and the business of the courts, because of the period of suspension. Fortunately, in this case, we can avoid such a hiatus. By expediting the preparation of this opinion, we have been

able to provide that the period of suspension immediately follows the release from custody.

The respondent's application to have the period of suspension made retroactive so that it coincides with a portion of the term served is not well taken. If the period of suspension is allowed to be coextensive with the period of imprisonment, it would, of course, make a vain thing of the suspension, and render futile the purposes for which the suspension has been imposed. On the other hand, if the period of suspension is imposed during a period long following the release from custody, it becomes thereby an unfair burden on the public (whose very protection is sought to be asserted by the disciplinary proceedings), on the clients of the attorney (who have sought his services on the implied representation that he is both morally and professionally fit to act as their attorney and counselor), and on the courts (which are most reluctant to grant continuances in most cases but would, nevertheless, be obliged to do so where matters have been set for trial by an attorney who has no reason to know in advance the period of his suspension).[1]

Accordingly, the action of the Board of Governors is affirmed in all respects, and the respondent is ordered suspended from the practice of law for a period of 30 days to commence on the day next succeeding his release from the United States Penitentiary on McNeil Island, and to continue uninterruptedly for a period of 30 days thereafter. Respondent is directed to notify the Board of Governors of the Washington State Bar Association in writing of the precise date of his release from McNeil Island so that an accurate record may be maintained by the board.

HILL, DONWORTH, ROSELLINI, HUNTER, and HAMILTON, JJ., concur.

FINLEY, J., concurs in the result.

---

[1]For a cogent discussion of the incongruous results obtained, and the burdens cast upon the public, the clients, and the attorneys by a suspension enforced long after release from custody, see the dissenting opinion by Rosellini, J., in *In re Greiner, ante* p. 306, 378 P. (2d) 456.

OTT, C. J. (dissenting)—John Caughlan was charged in a federal court with the crime of wilfully failing to file federal income tax returns for the years 1955 and 1956. He pleaded not guilty to both counts of the information. He was convicted by a jury and sentenced to serve 8 months on each count, in the federal penitentiary at McNeil Island, the sentences to run concurrently.

In addition to this conviction, the hearing panel of the Washington State Bar Association found the following facts, as charged in the second item of the formal complaint, to be true:

"The following is a summation of the record of Mr. Caughlan in the filing of U. S. income tax returns and payment of income tax from 1946 to 1961:

"(1) On September 20, 1948, he filed returns for the calendar years 1946, and 1947, and paid the income tax due in full;

"(2) On September 2, 1952, he filed returns for the calendar years 1948, 1949, and 1950, without accompanying payment of the tax due;

"(3) On June 22, 1953, he filed returns for the calendar years 1951 and 1952, with accompanying payment of the tax due;

"(4) On April 27, 1954 he filed a return for 1953 without accompanying payment of the tax due;

"(5) On April 26, 1955 he filed a return for the calendar year 1954, with full payment of the tax due;

"(6) He failed to file the income tax returns for the years 1955 and 1956;

"(7) On April 24, 1958 he filed a return for the year 1957, with a check in payment of the tax due; the check was dishonored on presentation at the bank on which it was drawn;

"(8) On July 16, 1959 he filed a return for the calendar year 1958, without accompanying payment of the tax due;

"(9) On June 3, 1960 he filed a return for the calendar year 1959, without accompanying payment of the tax due;

"(10) On May 12, 1961 he filed a return for the calendar year 1960, without accompanying payment of the tax due."

How long an attorney should be suspended from the practice of law, after he has been convicted and imprisoned for his criminal, unlawful, and dishonest conduct, rests within

the sound discretion of this court. *In re Greiner, ante* p. 306, 309, 378 P. (2d) 456 (1963), and cases cited.

In my opinion, the evidence in this case warrants a suspension of not less than 90 days. *In re Greiner, supra; In re Carson, ante* p. 304, 378 P. (2d) 450 (1963); *In re Case,* 59 Wn. (2d) 181, 367 P. (2d) 121 (1961); *In re Molthan,* 52 Wn. (2d) 560, 327 P. (2d) 427 (1958).

WEAVER, J., concurs with OTT, C. J.