[No. C.D. 2525.   En Banc.   April 9, 1964.]

*In the Matter of the Disciplinary Proceedings Against* ·
DANIEL J. ENGLISH, *an Attorney at Law.**

*T. M. Royce,* for Board of Governors.

HAMILTON, J.—In September, 1939, Daniel J. English was admitted to the Bar of the State of Washington, and entered the private practice of law in Snohomish County, where he has since resided. Following his return from service in World War II, he devoted a substantial part of his time

*Reported in 390 P. (2d) 999.

and energies to civic and community affairs, at the same time building and maintaining a reputable and successful law practice. In 1955, he did not have enough money to pay his income tax, and did not file a return for that year. Circumstances did not improve in 1956, and he again failed to file a return. The increasing burden of his derelictions and the fear of calling attention thereto prompted the same failure to file tax returns for the years 1957 and 1958. Conscience, remorse, and the continuing fear of detection and disgrace initiated a progressive withdrawal from civic and social life and a growing neglect of his law practice. In the latter part of 1958, he undertook the probate of an estate, and, in February, 1959, collected his fee, which included $40.83 due to the state as inheritance tax. He did not thereafter close the estate or pay the inheritance tax. Due to his continuing neglect of this estate, another attorney was required to conclude the probate and secure from Mr. English, through his wife, the $40.83 with which to pay the inheritance tax.

On April 5, 1962, the fears of Mr. English were finally realized. He was indicted on four counts of having wilfully and knowingly failed to file income tax returns for the years 1955, 1956, 1957, and 1958, in violation of 26 U.S.C. § 7203. On June 4, 1962, he entered a plea of guilty to each of the counts in the United States District Court for the Western District of Washington, Southern Division. He was sentenced to 6 months imprisonment and a fine of $1,000 on each count, the terms of imprisonment to run concurrently and the fines to be noncumulative. On October 2, 1962, he was released on parole from the federal penitentiary, and returned to his home in Everett, Washington.

The Washington State Bar Association first became aware of the difficulties of Mr. English in September, 1962. Disciplinary proceedings were promptly intiated, based upon his income tax derelictions and upon his neglect of the probate matter.

On December 6, 1962, a hearing was held before a hearing panel comprised of a member of the Board of Governors of the Washington State Bar Association and two members

of the local trial committee of the Snohomish County Bar. Mr. English was represented before the hearing panel by a respected attorney of Snohomish County. Responsible and reputable witnesses testified as to the reputation, character, and rehabilitation of Mr. English.

On December 18, 1962, the hearing panel entered its findings of fact, conclusions, and recommendation. The panel found, in essence, that Mr. English was guilty of the ethical violations charged; that prior to his difficulties he enjoyed an excellent public and professional reputation; that his derelictions, convictions, and imprisonment occasioned him severe emotional distress, a deep sense of repentance, and heavy financial liabilities; and that the total of his punishment was great. From these findings the panel concluded, in substance, that, although he had violated Canon of Professional Ethics 29, his conduct did not involve moral turpitude; that he was an honorable and contrite man capable of sustaining the standards of the legal profession; and that the imposition of further penalties by way of disbarment or suspension would serve no useful purpose. The panel recommended a reprimand. A separate, supporting statement, written by the chairman and concurred in by another member of the panel, was attached to the findings, conclusions, and recommendation.

After settlement and certification of the transcript of the testimony before the panel, the record was circulated to all members of the Board of Governors, except the member who presided over the hearing panel, for their review and recommendation. On June 24, 1963, the Board of Governors completed review, adopted the findings of the hearing panel, disagreed with the recommendation, and recommended imposition of a 90-day suspension. One member of the Board dissented and adopted the recommendation of the panel.

The matter now comes before this court for review. It was heard on February 11, 1964, one year and four months after the release of Mr. English from the imprisonment imposed for his income tax violations.

■ The administration of professional discipline, following conviction and imprisonment of an attorney for failure to file income tax returns, has been before this court on five previous occasions.[1] The disciplinary action recommended and adopted has not been, nor can it be, always uniform. Four threads of consistent approach do, however, appear.

(1) Disciplinary proceedings, per se, are not prosecuted primarily to punish the offender, but to curb disrespect for the profession, maintain its honor and dignity, and to assure to those who seek the services of an attorney that dishonesty and unlawful conduct will not be tolerated.

(2) Wilful failure by a member of the legal profession to file income tax returns as required by law is an offense which warrants and justifies professional disciplinary action.

(3) The discipline imposed, be it censure, reprimand, suspension, or disbarment, rests within the sound discretion of this court.

(4) The disciplinary action taken in any specific case is, and must be, predicated upon the particular facts and circumstances presented, consideration being given to such factors as the age, background, training, experience, character, reputation, stability, attitude, and rehabilitative potential of the individual attorney; the nature and extent of the dereliction or derelictions involved; the criminal punishment imposed and the necessity of restitution; the reflection cast by the misbehavior upon the integrity of the legal profession, both in the community and throughout the state; and any other factors properly bearing upon the question of professional discipline.

■ In addition we are in substantial, if not full, accord that in cases such as the present one, where the violation involves a term of imprisonment as well as the likelihood of professional suspension, the disciplinary proceedings should, consistent with due process and the practicalities of the situation, be initiated and concluded so as to permit

---

[1] *In re Molthan,* 52 Wn. (2d) 560, 327 P. (2d) 427; *In re Case,* 59 Wn. (2d) 181, 367 P. (2d) 121; *In re Carson,* 61 Wn. (2d) 304, 378 P. (2d) 450; *In re Greiner,* 61 Wn. (2d) 306, 378 P. (2d) 456; *In re Caughlan,* 61 Wn. (2d) 557, 379 P. (2d) 189.

any suspension imposed to commence upon the release of the attorney from imprisonment, with the understanding, of course, that any parole violation could be considered grounds for further disciplinary action. *In re Caughlan,* 61 Wn. (2d) 557, 379 P. (2d) 189. Circumspect liaison, in keeping with the dignity of the profession, might well be established with appropriate judicial agencies whereby the Bar Association could be timely advised of the conviction, sentence, and imprisonment of an attorney for an offense compelling professional disciplinary action.

In the instant case, we have before us the record of an attorney who has been a member of the Bar of this state since 1939. He has at all relevant times resided in the same community, with the exception of his absence in the service of his country during World War II and during his incarceration for the income tax violations here involved. During his active practice of law, prior to his tax derelictions, he earned for himself a fine reputation as a civic and community leader and as an attorney. Despite his tax difficulties and the neglect of his law practice, his background and character were such as to bring forth former business associates, clients, and friends to testify on his behalf. This evidence and his testimony before the hearing panel prompted the chairman, in his separate statement, to remark:

"I had never met Mr. English before this hearing. I have conducted several hearings and never have I seen such frankness, honesty and sincerity as was demonstrated by him. His character witnesses impressed me as being very high class people who sincerely believed in the worthiness of the respondent."

Since release from imprisonment Mr. English has voluntarily refrained from re-entering the private practice of law. Instead he has sought and obtained supervised employment in a field which, though utilizing his legal training, does not bring him into the highly sensitive areas revolving about private practice and the attorney-client relationship, nor entail the exercise of unguided legal judgment. Counsel for the Bar Association advises that he is successful in his employment and well regarded by his employer.

On the other side of the coin rests the gravity of the offenses involved, the weaknesses inherent in the explanations advanced, the term of imprisonment, the fine imposed and paid, the amount of taxes due and unpaid, and the inevitable disparagement cast upon the legal profession as a whole by the derelictions involved. These factors, however weighed, cannot be lightly disregarded.

We feel keenly that, in most cases such as this, the self-respect of the profession and the continuing trust of the public justifies professional disciplinary measures greater in magnitude than a reprimand. Likewise, we are acutely aware of the fact that background-wise there is little distinction between the circumstances productive of the tax violations in the instant case and in *In re Greiner,* 61 Wn. (2d) 306, 378 P. (2d) 456, wherein a 90-day suspension was imposed. Understandably, the Board of Governors would feel warranted in following the lead of that case.

We must, nevertheless, carefully review all factors involved in each case presented, and weigh them in the light of the inescapable fact that, in some measure at least, each must be judged within its own setting and framework. So viewing the instant case, certain distinguishing and alleviating facts, perhaps now emphasized by the lapse of time, stand out in relief. These factors are: (a) Since release from confinement, Mr. English has refrained from the private practice of law; (b) he has obtained and successfully retained other employment, which, though legal in nature, is regulated and supervised and does not bring him directly into the public and sensitive areas of the private practice; and (c) a professional suspension at this time could terminate his present employment, stifle his tax repayment program, and ultimately result in what might be an imprudent return to private practice.

Balancing the good and the bad, we conclude that at this time no useful purpose to the public or the Bar will be served by a suspension. Accordingly, we remand this case to the Board of Governors with directions to administer an official and a formal reprimand.

OTT, C. J., HILL, WEAVER, ROSELLINI, HUNTER, and HALE, JJ., concur.

FINLEY, J. (dissenting)—I cannot agree with the majoritys' disposition of this disciplinary matter. In my judgment Mr. English should be suspended indefinitely from the *private* practice of law, without restriction or prejudice respecting his right to make full use of his legal education and training in his present *supervised public employment.*

DONWORTH, J. concurs with FINLEY, J.