*In the Matter of the Disciplinary Proceeding Against* v.
BRAD ALAN PLUMB, *an Attorney at Law.*

*Maria S. Regimbal,* for Bar Association.
*Brad Alan Plumb,* pro se.

[As amended by order of the Supreme Court May 18, 1995.]

GUY, J. — While Brad Plumb was in his third year of law school, his wife and he received welfare benefits under the Family Independence Program (FIP). Plumb subsequently graduated from law school, passed the bar, and began work as a part-time instructor at Phillips Junior College and as a public defender. A jury convicted Plumb of failing to report the earnings from these jobs to the Department of Social and Health Services (DSHS). In light of this criminal conviction, the bar association's Disciplinary Board has recommended suspending Plumb from the practice of law for 3 years and requiring him to make full restitution of the welfare overpayments. We adopt the Disciplinary Board's recommended sanction.

FACTS

In November 1989, the Plumbs qualified for benefits under FIP, a pilot project of the Aid to Families with Dependent Children (AFDC) program. FIP relaxed the eligibility standards for AFDC and gave cash incentives to parents who returned to work. Because Plumb's wife had earned most of the family's income in the previous 24 months, she was the qualifying parent under FIP. If she worked under 100 hours per month, the family qualified for benefits.

Throughout Plumb's third year of law school, his family received benefits under FIP. On May 12, 1990, Plumb graduated from law school and began simultaneously to study for the bar and look for work. He took the July 1990 bar examination and passed. In August 1990, Plumb found work as a part-time instructor with Phillips Junior College, teaching law to paralegals. His first paycheck arrived in September 1990.

Under FIP, participants must report any changes in family income while receiving benefits. DSHS encloses a green "change of circumstances" card with each monthly check. During a routine check of recipients' social security numbers, DSHS discovered that Plumb had received work income. A review of the Plumbs' case file revealed that Plumb had not reported the income.

On January 2, 1991, Plumb accepted a temporary assignment as a clerk with the Spokane Public Defender's office. On January 15, 1991, Plumb took his oath of office as an attorney, and on January 25, 1991, he was admitted to the bar. One day later, DSHS notified Plumb of its investigation into his failure to disclose his work income. At the end of January, Plumb began work as an attorney for the Public Defender's office. Plumb failed to report this change in circumstances on time.

On July 12, 1991, the Prosecuting Attorney for Spokane County charged the Plumbs with one count each of first degree theft. The information alleged that the Plumbs

by means of a wilful false statement or representation or wilful failure to reveal any material fact, as required by law, or a

wilful failure to promptly notify the County Office in writing of any change in status . . . did obtain from the State of Washington Department of Social and Health Services, Public Assistance Division, public assistance of a value exceeding $1,500 to which they were not entitled or greater public assistance than that to which they were justly entitled[.]

After a 4-day trial, a jury found Plumb and his wife guilty of first degree theft, a class B felony. Neither had prior convictions. Plumb was sentenced to 30 days' confinement, converted to 240 hours of community service. In addition, Plumb was ordered to pay restitution equal to the amount of overpayments, $7,096. Plumb appealed, and the case is now pending in the Court of Appeals.

On May 4, 1993, this court suspended Plumb from practice under RLD 3.1 while disciplinary proceedings were pending. On April 26-28, 1994, Plumb had a disciplinary hearing, and on June 3, 1994, the hearings officer recommended that Plumb be disbarred. On review, the Disciplinary Board revised the recommended sanction to 3 years' suspension, dating from May 4, 1993. The Board also required Plumb, as a condition of reinstatement, to make full restitution of overpayments as ordered by the Superior Court.

Plumb now appeals, contending that his interim suspension has been sufficient discipline and that the 3-year suspension is inappropriate and excessive.

## ISSUE PRESENTED

Plumb's appeal presents the following issue: Should the court disbar Plumb or should it approve the Disciplinary Board's recommended 3-year suspension? We adopt the recommended suspension.

## ANALYSIS

■ This court gives "serious consideration" to the recommendations of the Disciplinary Board.

[T]he ultimate responsibility for determining the nature of discipline rests with this court and not the Disciplinary Board. *In re Espedal*, 82 Wn.2d 834, 838, 514 P.2d 518 (1973). We do not intend to abdicate this responsibility. Nevertheless, in fulfilling this responsibility, it is appropriate that we be guided

by the recommendations of the Disciplinary Board. Accordingly, we will adopt the sanction recommended by the Disciplinary Board unless we are able to articulate specific reasons for adopting a different sanction.

*In re Noble*, 100 Wn.2d 88, 95, 667 P.2d 608 (1983).

The court reviews the reasonableness of the Board's recommendation in light of five factors:

> 1. The purposes of attorney discipline (sanction must protect the public and deter other attorneys from similar misconduct);
>
> 2. The proportionality of the sanction to the misconduct (sanction must not depart significantly from sanctions imposed in similar cases);
>
> 3. The effect of the sanction on the attorney (sanction must not be clearly excessive);
>
> 4. The record developed by the hearing panel (sanction must be fairly supported by the record and must not be based upon considerations not supported by the record); and,
>
> 5. The extent of agreement among the members of the Board (sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons).

*In re Johnson*, 114 Wn.2d 737, 752, 790 P.2d 1227 (1990) (summarizing *In re Noble*, 100 Wn.2d at 95-96).

Thus, this court will approve the recommended sanction unless it can articulate a specific reason under these five factors for adopting a different result.

Before addressing the *Noble* factors, we first discuss whether Plumb in his brief has attacked the facts underlying his conviction. Bar counsel requests the court to strike Plumb's brief because it attempts to reopen issues decided by the jury in the criminal trial. Under RLD 4.9,

> the court record setting forth the conviction shall be conclusive evidence at the ensuing disciplinary hearing of the guilt of the respondent lawyer of the crime for which he or she was convicted and of his or her violation of the statute upon which the conviction was based.

In his statement of facts, Plumb attempts to introduce a caseworker's notes which the hearing officer refused to admit into the record.

■ In *In re Curran*, 115 Wn.2d 747, 759-60, 801 P.2d 962 (1990), the court permitted introduction of evidence to explain an "ambiguous" jury verdict.

> While our rules do not allow a lawyer to challenge facts established through the jury verdict, RLD 4.9, they do not preclude bar counsel from clarifying a jury verdict through introduction of portions of the criminal record or live testimony tending to detail the nature of the act committed. A lawyer is free to challenge such evidence insofar as his argument does not call into question those facts and legal conclusions that the jury must have made in order to arrive at a verdict.

Here, bar counsel introduced the entire transcript from Plumb's criminal trial at the disciplinary hearing.

We reemphasize that a convicted attorney may not challenge the evidence leading to his or her criminal conviction. The court record is conclusive evidence of guilt. The court in *Curran* drew a line between those facts necessary to a jury's verdict and those which, although not necessary to the verdict, explain the nature of the crime or the verdict. An attorney may only contest the latter in disciplinary hearings.

After reviewing Plumb's brief, we conclude his statement of the case recites facts which attack his criminal conviction. To reach its verdict, the jury rejected Plumb's explanations for failing to disclose his work income. He cannot raise these arguments in a subsequent disciplinary hearing. We therefore strike pages 2-10 of Plumb's brief, and they shall have no bearing on our decision. Plumb's conviction is conclusive evidence of his guilt.

■ We now reach the central issue in this case — the appropriate sanction for Plumb. The parties agree the presumptive sanction for first degree theft is disbarment. However, before the Disciplinary Board, bar counsel contended that two prior cases which resulted in stipulated suspensions reduced the appropriate sanction in Plumb's case to suspension. The Board recommended a 3-year suspension which dated back to the start of Plumb's interim suspen-

sion, May 4, 1993, and a required repayment plan for the restitution of $7,096 ordered at Plumb's criminal trial.

■ After reviewing the five *Noble* factors, we approve the Disciplinary Board's recommended sanction.

### Protection and Deterrence—The Purposes of Discipline

Because we are committed to the proposition that discipline is not imposed as punishment for the misconduct, then our primary concern is with protecting the public and deterring other lawyers from similar misconduct.

*In re Noble*, 100 Wn.2d at 95. The twin goals of deterrence and protecting the public are prospective: the court must predict the effects of the sanction on the disciplined attorney, on the other attorneys who may be tempted to make similar choices to break the law, and on the public at large.

Plumb contends the Disciplinary Board had no authority to order a 3-year suspension. Under RLD 5.1(b), a sanction may include "[s]uspension from the practice of law for an appropriate fixed period of time not exceeding 2 years". Plumb argues that this rule limits the period of any suspension to 2 years.

■ The 2-year limit in RLD 5.1(b) does not apply to interim suspension under RLD 3.1. The rules create two categories of suspension: an order of suspension following a finding of misconduct (RLD 5.1(b)), and an interim suspension which takes effect whenever a lawyer is convicted of a serious crime (RLD 3.1). An order of suspension is a sanction entered after disciplinary hearings; interim suspension is much like a temporary restraining order which prevents a convicted lawyer from practicing law while disciplinary proceedings are pending.

The time limits for interim suspension differ from those on an order of suspension. An order of suspension must be for a fixed time not exceeding 2 years. *See* RLD 5.1(b). On the other hand, the length of an interim suspension is variable, depending on when final disposition occurs. *See* RLD 3.1(f).

Thus, the Disciplinary Board may order a 3-year suspension which *includes* the period of interim suspension without violating RLD 5.1(b). The Board in this case complicated matters by including the dates of interim suspension, from May 4, 1993, until the date of the Board's decision, July 15, 1994, in its order of suspension. The 3-year suspension combines 1 year 2 months of interim suspension with 1 year and 10 months of suspension as a sanction for misconduct. Because the Board ordered future suspension of less than 2 years (1 year 10 months), the sanction is valid under RLD 5.1(b).

Next, Plumb argues that the 3-year suspension is beyond what is necessary to protect the public. The bar does not allege that Plumb was an incompetent lawyer, and Plumb has submitted statements from clients praising his work. This, Plumb contends, proves that a nexus does not exist between his conviction for welfare fraud and the qualities necessary to practice law.

■ This argument fails on two grounds. First, welfare fraud, a crime of dishonesty, reflects directly on Plumb's fitness to practice law. In *Curran*, the court held that

> conduct reflecting adversely on a lawyer's fitness to practice law can only be found when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice.

*In re Curran*, 115 Wn.2d at 768. Plumb's willful failure to disclose his employment shows both a disregard for his legal obligations under the FIP program and repeated failure to pay attention to important details. Competent lawyering requires the opposite characteristics.

Second, "evidence of the practitioner's capability will not always be determinative of whether an act reflects adversely on an attorney's fitness." *In re Curran*, 115 Wn.2d at 768. Because theft is an archetypal criminal act "that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects", *see* RPC 8.4(b), Plumb's conviction tempers any evidence of his competence. A compelling nexus exists between Plumb's crime of dishonesty and unfitness to practice.

Plumb also argues that the consequences of his conviction and interim suspension, rather than further suspension, will deter other attorneys from similar conduct. Plumb alleges that he already has lost his law practice, $45,000 in earned fees, and the ability to provide for his family. He argues that further suspension will not create any marginal increase in deterrence.

Without detracting from the hardships the Plumbs have suffered, any attorney convicted of first degree theft would suffer great damage to his or her reputation and practice. The purpose of disciplinary sanctions is to ensure that reasonable attorneys appreciate the serious consequences of misconduct. *In re Malone*, 107 Wn.2d 263, 268, 728 P.2d 1029 (1986). Although calculating the additional deterrence from suspension is, as a practical matter, impossible, the failure to suspend Plumb would clearly reduce the deterrent effect of attorney discipline.

The goals of deterrence and protection weigh strongly in favor of suspension. The Disciplinary Board's recommended sanction makes clear that any attorney's failure to disclose income, whether on a welfare application or a tax form, will jeopardize the attorney's practice. Furthermore, the recommended sanction protects the integrity of the bar and the welfare system. By linking Plumb's reinstatement to his payment of restitution, the Board has created the strongest incentive for Plumb to repay his debt.

### Comparison of the Sanction and the Misconduct

Comparison of the recommendation with sanctions imposed in similar cases may sometimes be of assistance. Such comparisons will seldom be determinative, given the infinite variety of misconduct and of aggravating and mitigating factors. Nevertheless, a recommendation of the Board might not be adopted where it departs significantly from sanctions imposed in similar cases.

*In re Noble*, 100 Wn.2d at 95.

Bar counsel first recommended disbarment to the hearing officer but then changed her proposal to suspension in light of the *stipulated* 2-year suspension in In re Ryan, WSBA No. 17882 and 1-year suspension in In re Havirco, WSBA

No. 19922. The hearing officer recommended disbarment: "Lawyers clearly and unequivocally should understand that felony convictions involving theft and dishonesty shall result in disbarment." On appeal, the Disciplinary Board reduced Plumb's sanction to a 3-year suspension.

In his brief, Plumb reargues the aggravating and mitigating factors which led to the recommended sanction. The hearing officer found numerous aggravating factors and, more importantly, no mitigating factors which would alter the presumptive sanction of disbarment. A majority of the Disciplinary Board (six members) did not take issue with these findings, but apparently accepted the bar counsel's view that similar cases, In re Ryan and In re Havirco, merited only suspension. Five members dissented. Four agreed with the hearing officer and recommended disbarment. One recommended a 2-year suspension based on In re Ryan and In re Havirco.

█ Although not binding on the court, In re Ryan and In re Havirco support adopting the Disciplinary Board's recommendation. See In re Curran, 115 Wn.2d at 756 n.2 ("approval of a stipulation is not binding precedent"). In In re Ryan, the attorney failed to disclose the existence of an asset while declaring bankruptcy. The attorney pleaded guilty to a federal class D felony and received 4 years' probation and an order to pay $15,295 in restitution. He fulfilled all conditions of his sentence. This court approved the stipulated 2-year suspension.

In re Havirco involved a former King County payments clerk who charged over $4,500 in personal long-distance calls to a SCAN number. The attorney pleaded guilty to fraud in obtaining telecommunication services, a class C felony, and received a sentence of 240 hours of community service. This court approved a stipulated sanction of 1 year's suspension.

Both In re Ryan and In re Havirco, like Plumb's case, involve unusual types of theft with dollar amounts ranging from $4,500 to over $15,000. In both cases, the court disciplined the attorneys with suspensions. The Disciplinary

Board, at bar counsel's urging, recommends a similar sanction in this case. Plumb is no more culpable or sympathetic than Ryan or Havirco. If Plumb follows a restitution agreement, as did Ryan and Havirco, he may seek reinstatement after the suspension. If Plumb fails to repay his debt, he is for all practical purposes disbarred.

### The Effect of the Sanction on the Attorney

We will not blind ourselves to the hardships created by disbarment or suspension. In some cases, it might be concluded that the recommended sanction is clearly excessive, weighing the nature of the misconduct against the hardships imposed on the attorney.

*In re Noble*, 100 Wn.2d at 95-96.

The hardship on the Plumbs has been great. His family is once again receiving public assistance because Plumb had to end what he describes as an active solo practice. After his family sacrificed during the 3 years of law school and during the 10 years it took Plumb to gain his undergraduate degree, Plumb is now unable to use his law degree.

Neither a 3-year suspension nor disbarment is clearly excessive discipline for first degree theft. However, the economic hardships on the Plumbs, coupled with his likely ability to provide for his family as a lawyer, suggest that suspension is the appropriate sanction. During his months in active practice, Plumb successfully served clients and gained the respect of local attorneys. By suspending Plumb and conditioning reinstatement on repayment of restitution, the responsibility is Plumb's. Either he will fully comply with the disciplinary sanction and the trial court's order or he will give up the practice of law.

The hardships in this case are real, but they do not render either suspension or disbarment "clearly excessive".

### Support From the Record

Plumb concedes the record supports the Disciplinary Board's recommended sanction. He argues instead that he has already received a sufficient sanction to satisfy the purposes of attorney discipline.

For the reasons stated above, Plumb's crime of dishonesty requires a sanction greater than interim suspension.

## The Extent of Agreement Among the Board

Little agreement existed among Board members on this case. By a vote of 6 to 5, the Disciplinary Board modified the hearing officer's recommended sanction from disbarment to a 3-year suspension. Four members voted to uphold the hearing officer. "A recommendation from which there is a dissent may well be more readily rejected." *In re Noble*, 100 Wn.2d at 96.

The court does not, however, reject the recommendation of the Disciplinary Board. A 3-year suspension with restitution both acts as a deterrent and protects the public. Furthermore, in two similar cases the court has imposed suspensions. Because reinstatement requires repayment of restitution, Plumb shoulders the responsibility for returning to practice.

In this case, we find disbarment would act as a deterrent, but do little else.

### CONCLUSION

We adopt the Disciplinary Board's recommended sanction. The court suspends Brad Plumb from the practice of law for 3 years, dating from May 4, 1993. Plumb must enter a repayment agreement acceptable to the bar association to make full restitution as ordered by the Superior Court. Plumb must comply with the terms of the repayment agreement or face further disciplinary proceedings.

DURHAM, C.J., and UTTER, DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.

Reconsideration denied June 14, 1995.