[No. 200,569-1.   En Banc.]
Argued January 13, 2009.     Decided July 16, 2009.

*In the Matter of the Disciplinary Proceeding Against* A.
MARK VANDERVEEN, *an Attorney at Law.*

596

*A. Mark Vanderveen*, pro se.
*Kurt M. Bulmer*, for the attorney.
*Christine Gray*, for the Bar Association.

¶1 C. JOHNSON, J. — A. Mark Vanderveen appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) recommendation of disbarment arising from his guilty plea for willful failure to file a currency report, a felony, in violation of 31 U.S.C. §§ 5331(a) and 5322(a). The WSBA filed five counts against Vanderveen and sought the presumptive sanction of disbarment. The hearing officer dismissed four counts but found Vanderveen violated two Rules of Professional Conduct, 8.4(b) and 8.4(c), as the WSBA charged in count 5. The hearing officer determined disbarment was the presumptive sanction but found mitigating factors and recommended a three-year suspension. The Board modified several of the hearing officer's findings, including two mitigating factors, and instead recommended disbarment. Vanderveen assigns error to multiple findings and the Board's recommendation of disbarment. We affirm the Board's recommendation.

## FACTS

¶2 On March 1, 2005, former attorney James White asked Vanderveen[1] to represent Wesley Cornett. Cornett was under investigation by the FBI (Federal Bureau of Investigation) for involvement in a major drug ring. White represented Robert Kesling, one of the top men in the drug ring and Cornett's superior. Knowing these facts, Vanderveen agreed to represent Cornett and told him at their first meeting that Cornett's "friends or associates" would pay his attorney fees. Transcript (TR) (Nov. 30, 2007) at 55-56. Cornett agreed.[2]

¶3 White paid Vanderveen $20,000 cash in two installments for Vanderveen's representation of Cornett. On March 17, 2005, White left the first cash payment of approximately $10,000 in a paper bag in the court chambers at Edmonds Municipal Court, where both White and Vanderveen sat as pro tempore judges. White gave Vanderveen the remaining $10,000 cash within a couple of weeks by delivering it to him in a parking lot outside of a bank. According to Vanderveen, White told him "[T]he people [Cornett] works with have given me some money, and I can pass it on to you." TR (Jan. 10, 2007) at 346.

¶4 Vanderveen's ordinary business practice with regard to receipt of legal fees in the form of cash was to deposit them in the bank on the same day he received them, photocopy the payments for his records, and enter them into his QuickBooks accounting system. When he received White's cash payments, Vanderveen did not follow his ordinary practice. Instead, he placed each of the payments in his home safe. TR (Jan. 9, 2007) at 141-42. Further, Vanderveen failed to report the receipt of the cash payments as required by 31 U.S.C. §§ 5331(a) and 5322.

---

[1] Vanderveen was admitted to the Washington State Bar in 1989.

[2] Unbeknownst to Vanderveen, Cornett had agreed to be an FBI informant and was already represented by a public defender.

¶5 In exchange for the $20,000 he received from White, Vanderveen represented Cornett beginning in early March 2005. During that time, Vanderveen acceded to requests from White, on behalf of Kesling, to help them get information from or about Cornett.[3] For example, Vanderveen helped White conduct surveillance of Cornett without Cornett's knowledge or approval. WSBA Answering Br. at 5; TR (Jan. 8, 2007) at 83-84. With Vanderveen's assistance, White had Cornett followed to discover if Cornett had taken a trailer full of marijuana or was cooperating with law enforcement. WSBA Answering Br. at 6; TR (Jan. 8, 2007) at 62, 74; TR (Jan. 11, 2007) at 523.

¶6 In early May 2005, federal authorities informed White he was under investigation for involvement in Kesling's drug ring. White agreed to cooperate with authorities and recorded a phone conversation between him and Vanderveen in which they discussed the cash payments White made to Vanderveen and Vanderveen's failure to report them.[4] As a result, on July 22, 2005, Vanderveen was charged with and entered a guilty plea to violations of 31 U.S.C. §§ 5331(a) and 5322. Section 5331(a) requires persons in trade or business, such as lawyers, to report the receipt of more than $10,000 cash in one transaction (or two or more related transactions) in connection with that trade or business. Section 5322(a) makes it a felony for a person to "willfully" violate the reporting requirement.[5]

¶7 The court imposed a three-month prison sentence to be followed by home detention. WSBA Answering Br. at 11. After serving his prison term, Vanderveen served his 90-day home detention, during which he was required to wear an ankle bracelet. Near the end of his detention, Vanderveen

---

[3] We include only those facts *directly* relevant to the challenged findings and count 5.

[4] This conversation can be found in exhibit 126B and in part in respondent's brief at 7-8.

[5] The report is made to the Financial Crimes Enforcement Network; it is designed to assist law enforcement officers in the detection of criminal activity. WSBA Answering Br. at 15-16.

asked his probation officer if he could cut off his ankle bracelet. Although the officer refused the request, Vanderveen removed his bracelet and left his home on the last day of his detention. Due to this probation violation, Vanderveen was sentenced to 6 additional days in prison and 30 additional days in home detention.

## PROCEDURAL HISTORY

¶8 On July 27, 2005, the WSBA filed disciplinary charges against Vanderveen. The WSBA initially charged Vanderveen with five counts. The hearing officer dismissed four counts. Findings of Fact (FF) and Conclusions of Law (CL) and Recommendations 31, 32, 33, and 34. However, he found Vanderveen violated two of the three RPCs in count 5, arising from his guilty plea to violations of 31 U.S.C. §§ 5331(a) and 5322. Count 5 reads:

> By committing the acts that resulted in the guilty plea to failing to file a currency transaction report (IRS form 8300), as set forth above, Respondent violated RPC 8.4(b), RPC 8.4(c), and/or RPC 8.4(i).[6]

The hearing officer found Vanderveen violated RPC 8.4(b) because his act "adversely reflects on his honesty, trustworthiness or fitness as a lawyer." CL 35. He found Vanderveen had violated RPC 8.4(c) because his act consisted of "dishonesty" in that it reflected "untrustworthiness and a lack of integrity." CL 35. However, the hearing officer found that Vanderveen had not violated RPC 8.4(i) because the act did

---

6 RPC 8.4: Misconduct
It is professional misconduct for a lawyer to:
. . . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
. . . .
(i) commit any act involving moral turpitude, or corruption, or any unjustified act of assault or other act which reflects disregard for the rule of law . . . .

"not involve moral turpitude, corruption, an unjustified act of assault or other act which reflects disregard for the law." CL 35.

¶9 The hearing officer found that Vanderveen's mental state arising from his conviction was "willful" and that willful meant "intentional" conduct. The hearing officer then determined the presumptive sanction for each violation by applying the American Bar Association (ABA) *Standards for Imposing Lawyer Sanctions* (1991). Under standard 5.11(b), the presumptive sanction is disbarment for violations of RPC 8.4(b) and 8.4(c) because they involve "intentional conduct" and "dishonesty." The hearing officer found one aggravating factor: substantial experience in the practice of law. He also found five mitigating factors: absence of a disciplinary record, full and free disclosure, remorse, character or reputation, and a mitigator related to Vanderveen's guilty plea of "willful" conduct. Based on the aforementioned mitigators, the purposes of discipline, and the notion of "individualized justice," the hearing officer recommended a three-year suspension.

¶10 On appeal, the Board agreed with the hearing officer's dismissal of counts 1-4. However, it modified two findings of fact relating to those dismissed counts. FF 25, 26.[7] With regard to count 5, the Board struck the hearing officer's finding of two mitigating factors, one relating to character or reputation and the other to Vanderveen's state of mind in his plea agreement. The Board also changed the sanction to disbarment by a 10 to 1 vote.

¶11 Vanderveen appeals to this court, asking us to consider the appropriate sanction. He assigns several errors to the findings and conclusions, namely to: the Board's modifications of the hearing officer's findings,[8] the Board's and the hearing officer's finding that he acted "intentionally,"[9]

---

[7] The Board modified FF 25 and 26, but it did not modify the conclusions of law relating to those findings.

[8] FF 25, 26, 29.

[9] FF 36; CL 40.

the application of Rules for Enforcement of Lawyer Conduct 10.14(c), the Board's and the hearing officer's findings he acted "dishonestly,"[10] the Board's and the hearing officer's application of standard 5.11(b),[11] and the Board's recommendation of disbarment.

## ANALYSIS

¶12 This court bears the ultimate responsibility for lawyer discipline in Washington. The court will give great weight to the hearing officer's findings of fact. This court will not disturb findings of fact made on conflicting evidence, and it will uphold findings of fact that are supported by substantial evidence. Substantial evidence is evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise. *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 208-09, 125 P.3d 954 (2006).

¶13 The court reviews conclusions of law de novo, and it will uphold those conclusions if they are supported by the findings of fact. We also review sanction recommendations de novo but generally affirm the Board's sanction recommendation unless we can articulate a specific reason to reject it. *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 60, 93 P.3d 166 (2004).

*A. Challenged Findings of Fact Related to Dismissed Counts*

¶14 Vanderveen assigns error to the Board's modification of two related findings, FF 25[12] and 26,[13] but he explicitly excludes detailed argument regarding the find-

---

[10] CL 35.

[11] CL 37.

[12] Stricken FF 25: "Respondent's conduct and advice with regard [to] Cornett and his communications to White were what one would expect from a lawyer who thought Cornett was his client. Respondent did what any lawyer in his position should do acting in the best interests of his client."

[13] Amended FF 26: "Respondent ~~clearly~~ understood that his responsibilities were to Cornett, and no one else. ~~He demonstrated this fact consistently.~~ . . ."

ings because they relate to dismissed counts.[14] Although the WSBA does not argue that the hearing officer erred in dismissing the counts that relate to these findings, it contends that substantial evidence does not exist to support the findings of fact. In light of Vanderveen's deliberate omission of persuasive argument on this point, we find that the Board properly struck FF 25 and 26.[15]

### B. Challenged Findings of Fact Related to Count 5

¶15 First, Vanderveen challenges the Board's elimination of FF 29 concerning his good character or reputation. As the mitigating factors analysis below demonstrates, the record does not provide substantial evidence to support a finding regarding character or reputation. The Board properly struck FF 29.

¶16 Second, and most significantly for the purposes of Vanderveen's sanction, he challenges the Board's and the hearing officer's finding that he acted intentionally. FF 30; CL 36. However, Vanderveen's guilty plea to "willful" violation of 31 U.S.C. §§ 5331(a) and 5322 conclusively establishes that he acted "intentionally."

¶17 Both the hearing officer and the Board found that Vanderveen's conviction established that he acted intentionally based in part on *Ratzlaf v. United States*, 510 U.S. 135, 114 S. Ct. 655, 126 L. Ed. 2d 615 (1994). In that case, the United States Supreme Court held that "willful" in the context of § 5322 means acting with the knowledge that

---

[14] Vanderveen assigned error to these findings only to reserve the right to discuss them if the WSBA demonstrated that they relate to count 5 and the Board's disbarment sanction. Resp't's Br. at 13.

[15] As support for FF 25 and 26, Vanderveen cites only to the "hearing officer's experience and special knowledge," arguing that the hearing officer has the ability to make such inferences. Resp't's Br. at 12-13. His cursory argument is unpersuasive. As the WSBA argues, Vanderveen's own testimony establishes that he knew White intended to follow Cornett, that he assisted White in this surveillance, and that he intentionally failed to inform Cornett of the surveillance. The Board properly struck FF 25. For the same reasons, the Board's related amendment of FF 26, striking the hearing officer's finding that Vanderveen "clearly" understood his responsibilities to his client and "[h]e demonstrated this fact consistently," was proper.

one's conduct is unlawful, and it approvingly cited appellate court cases defining "willfully" as having both " 'knowledge of the reporting requirement' " and a " 'specific intent to commit the crime.' " *Ratzlaf*, 510 U.S. at 137, 141. The *Ratzlaf* Court reversed the defendant's judgment and remanded the case because the jury instructions did not contain this definition of "willfully."

¶18 Vanderveen asserts that *Ratzlaf* applies only to "structuring cases."[16] He also contends that *Ratzlaf* does not provide binding precedent as to what "willful" means as applied to § 5331. The essence of Vanderveen's latter argument is that *Ratzlaf* did not interpret "willfulness" as it applies specifically to § 5331; rather it determined that "willfully" can have different meanings depending on the context. Due to the malleability of the term, Vanderveen asserts he "should be given the benefit of possible alternate interpretations." Resp't's Br. at 16-17. A reading of *Ratzlaf* reveals that his arguments lack merit.

¶19 Although *Ratzlaf* involved §§ 5324(a)(3), 5331, and 5322(a), and a structuring issue, the Court did not limit its interpretation of the term "willfulness" to structuring cases.[17] In interpreting the term "willfulness" in § 5322(a), the Court explicitly stated that it had cause to "construe a *single* formulation [of] § 5322(a), the same way each time it

---

[16] "Structuring" refers to the deliberate structuring of financial transactions for the purpose of avoiding reporting requirements by financial institutions. *See, e.g.*, 31 U.S.C. § 5324(a)(3).

[17] Post-*Ratzlaf*, Congress amended Title 31, excepting violations of § 5324 (a structuring provision) from the penalty provision of § 5322, and it added a new penalty provision for structuring violations to § 5324. *See United States v. Pang*, 362 F.3d 1187, 1194-95 (9th Cir. 2004). Congress did not alter the state of mind necessary for violations of the provisions at issue here: willfulness remains required for violations of §§ 5331(a) and 5322(a). Postamendment case law involving violations of Title 31 have applied *Ratzlaf*'s definition of "willfulness" to other provisions under that title that require a "willful" state of mind. *See, e.g.*, *United States v. Reguer*, 901 F. Supp. 515 (E.D.N.Y. 1995) (*Ratzlaf* definition of "willfulness" applies retroactively to violations of §§ 5331 and 5322(a)).

is called into play."[18] *Ratzlaf*, 510 U.S. at 143. Thus, as the WSBA argues, the term "willfulness" should be interpreted the same each time it comes into play under the various subchapters of Title 31, including the section at issue here, § 5331.[19] Thus, when Vanderveen pleaded guilty to acting "willfully," he pleaded guilty to acting "intentionally," i.e., with the knowledge that his conduct was unlawful.

¶20 In addition, Vanderveen challenges the Board's and the hearing officer's application of ELC 10.14(c) to conclusively establish his mental state based on his criminal conviction for the purpose of a disciplinary hearing. The ELCs are the rules governing the procedure by which a lawyer may be subjected to disciplinary sanctions or actions for violation of the RPCs. ELC 1.1. ELC 10.14 provides:

> **(c) Proceeding Based on Criminal Conviction.** If a formal complaint charges a respondent lawyer with an act of misconduct for which the respondent has been convicted in a criminal proceeding, the court record of the conviction is conclusive evidence at the disciplinary hearing of the respondent's guilt of the crime and violation of the statute on which the conviction was based.

Pursuant to ELC 10.14(c), when Vanderveen pleaded guilty to violating 31 U.S.C. §§ 5331 and 5322, he conclusively established his state of mind for the purposes of his disciplinary hearing regarding that violation. Resp't's Br. at 19. Under ELC 10.14(c), the WSBA is not required to prove again each essential element of the crime to which a defendant has already been convicted. Vanderveen's guilty plea establishes that he acted intentionally because his "intentional" or "willful" state of mind is an essential element of the crime to which he pleaded.

---

[18] *See also Reguer*, 901 F. Supp. at 518 ("willfulness" requirement of § 5322(a) should be read consistently throughout the statute, applying to all subchapters of Title 31).

[19] Additionally, the plain language meaning of the word "willful" is synonymous with "intentional." The adjective "willful" is defined as "done deliberately : . . . INTENTIONAL." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (2002); *see also* BLACK'S LAW DICTIONARY 1630 (8th ed. 2004) (defining "willful" as "[v]oluntary and intentional, but not necessarily malicious").

¶21 In support of the application of ELC 10.14(c), the WSBA cites *In re Disciplinary Proceeding Against Perez-Pena*, 161 Wn.2d 820, 168 P.3d 408 (2007). In that case, this court held that a lawyer's criminal conviction provided conclusive evidence of his guilt on an assault charge under ELC 10.14(c), despite his hearing testimony that he did not touch the victim. In reaching this conclusion, we quoted the ABA's comments to the *Model Rules for Lawyer Disciplinary Enforcement* (2007), stating in relevant part that when a disciplinary hearing is based on prior criminal conviction, " '[t]he respondent may offer evidence of mitigating circumstances *not inconsistent* with the essential elements of the crime whose existence is conclusively established by the finding of guilt.' " *In re Perez-Pena*, 161 Wn.2d at 831 (emphasis added) (quoting Rule 19 cmt.); *see also In re Disciplinary Proceeding Against Plumb*, 126 Wn.2d 334, 892 P.2d 739 (1995) (court rejected evidence containing facts contrary to those necessary to prove prior criminal conviction for welfare fraud). Thus, as the WSBA argues, ELC 10.14(c) and case law prohibit a lawyer from disputing the essential facts regarding a prior criminal conviction for the purposes of a disciplinary proceeding.

¶22 Although under ELC 10.14(c) the WSBA is not required to offer additional evidence of Vanderveen's state of mind other than his conviction, additional evidence supports a finding of intentional conduct. As the WSBA argues, the record shows Vanderveen not only failed to report the cash payments but also took deliberate steps to hide them. The WSBA cites the undisputed facts that Vanderveen received two $10,000 cash payments, one in a paper bag left in a courthouse and another in a parking lot. Vanderveen did not take the payments to the bank. He did not enter them into his accounting system, nor did he make any record of their receipt. Instead, Vanderveen took the cash payments to his house and placed them in his home safe. These actions, coupled with Vanderveen's willful failure to file the required form 8300, are consistent with a conscious intent to conceal the receipt of the cash payments.

## SANCTIONS

¶23 The ABA *Standards* guides us in our determination of the appropriate sanction for attorney misconduct. Where the sanction recommendations of the hearing officer and the Board differ, the court gives greater weight to the Board because the Board is the only body to hear the full range of disciplinary matters and has a unique experience and perspective in the administration of sanctions. *In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 754, 82 P.3d 224 (2004).

¶24 If raised, we must consider two *Noble* factors before imposing a sanction. *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 95-96, 667 P.2d 608 (1983). Those two factors are (1) proportionality of the sanction to the misconduct and (2) the extent of the agreement among the members of the Board. *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 764, 108 P.3d 761 (2005).

¶25 The ABA *Standards* lists four factors we should examine before imposing sanctions. After a finding of lawyer misconduct, a court should consider (a) the ethical duties violated, (b) the lawyer's mental state, (c) the actual or potential injury caused by the lawyer's misconduct, and (d) aggravating and mitigating factors. STANDARDS at 5. Analytically, we have described how the court engages in a two-step process utilizing the ABA *Standards*. We first examine the duty violated, the mental state, and the injury to arrive at the presumptive sanction. We then consider aggravating and/or mitigating factors to determine if the presumptive sanction should be modified. *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 195, 117 P.3d 1134 (2005).

### A. Duties Violated

¶26 The types of duty or duties violated are important in evaluating the harm of the misconduct. "The

extent of the *injury* is defined by the type of duty violated and the extent of actual or potential harm." STANDARDS at 6. A single act of misconduct may violate more than one duty.

¶27 At issue here is one act of misconduct, which violated two RPCs. Based on Vanderveen's violations of 31 U.S.C. §§ 5331 and 5322, the hearing officer concluded that he violated RPC 8.4(b) because his conduct adversely reflected on his honesty, trustworthiness, or fitness as a lawyer in other respects. CL 35. Vanderveen does not challenge this conclusion of law. The hearing officer also concluded that Vanderveen's willful failure to file form 8300 resulted in a violation of RPC 8.4(c) because his actions constituted "dishonesty" in that they reflected "untrustworthiness and a lack of integrity." CL 35. Vanderveen contends that no factual findings support this conclusion. He also asserts that his felony conviction and violation of RPC 8.4(b) are not conclusive proof that he acted "dishonestly." Instead, Vanderveen maintains the bar must "independently prove" that he acted dishonestly, but he cites no legal authority to support that proposition. Resp't's Br. at 18-19.

¶28 We find that Vanderveen's felony conviction and other undisputed facts in this case support the conclusion that he acted dishonestly. The Board and the hearing officer found Vanderveen acted intentionally based on his plea agreement and the aforementioned *Ratzlaf* case. FF 30; CL 36. Additionally, ELC 10.14(c) conclusively establishes Vanderveen's misconduct for the purposes of a disciplinary hearing. Moreover, it is undisputed that Vanderveen received $20,000 in cash payments and failed to put them in the bank or enter them into his accounting system. Instead, Vanderveen took the payments to his home and put them in a personal safe. Such conduct is not consistent with what this court would categorize as honest or truthful behavior. These findings taken together support the conclusion that Vanderveen's conduct reflects "untrustworthiness and a lack of integrity" such that it constitutes "dishonesty" in violation of RPC 8.4(c). FF 35.

## B. Mental State

¶29 According to the ABA *Standards*, the most culpable mental state is "intentional." STANDARDS at 6. The *Standards* defines "intent" as "when the lawyer acts with the conscious objective or purpose to accomplish a particular result." STANDARDS at 6. In cases where we have found that an attorney acted with an intentional state of mind, generally the attorney's intent was to benefit herself or himself. *In re Poole*, 156 Wn.2d at 239.

¶30 As stated above, in cases involving a criminal conviction, ELC 10.14(c) conclusively establishes the respondent's guilt for the purposes of a disciplinary hearing, and the respondent may not challenge the essential elements of that criminal conviction. Thus, Vanderveen's mental state for the purposes of sanctions is intentional because he acted willfully when he failed to file form 8300. Additionally, as the WSBA points out, the meaning of "intentional" under the ABA *Standards* comports with the mental state required for Vanderveen's conviction. Further, Vanderveen's conduct in receiving the cash payments and failing to record them in his accounting system, take them to the bank, or file form 8300 can properly be characterized as nothing other than intentional conduct. Vanderveen had "the conscious objective or purpose to accomplish a particular result"—concealing the receipt of the cash payments. STANDARDS at 7 (definition of "intent"). Finally, there is no indication that Vanderveen's conduct in concealing the receipt of these payments was intended to benefit anyone other than himself. We conclude that he acted intentionally.

## C. Injury

¶31 The ABA *Standards* lists three levels of injury: " 'serious' injury," " 'injury,' " and " 'little or no' injury." STANDARDS at 7. The reference "to 'injury' alone indicates any level of injury greater than 'little or no' injury." STANDARDS at 7. Here, we find Vanderveen's misconduct constitutes a serious injury. His felony conviction under-

mines the public's confidence in lawyers and contributes to the erosion of respect for legal institutions and the law. Further, Vanderveen's criminal conduct reflects adversely on his fitness to practice law. His intentional concealment of the cash payments and willful failure to file form 8300 constitute dishonest conduct. Vanderveen's injury to the integrity of the legal profession was serious.

### D. Presumptive Sanction

¶32 Based on the findings that Vanderveen violated RPC 8.4(b) (commission of a criminal act adversely reflecting on honesty or fitness to practice) and RPC 8.4(c) (conduct involving dishonesty) and acted "intentionally," the Board and the hearing officer applied standard 5.11(b) to determine Vanderveen's sanction for his violations of the law. Under standard 5.11, disbarment is generally appropriate when

> (b) a lawyer engages in any . . . *intentional conduct involving dishonesty* . . . that seriously adversely reflects on the lawyer's fitness to practice.

(Emphasis added.) Vanderveen challenges the application of standard 5.11(b) because he contends that his guilty plea to "willful" criminal conduct does not mean that, for the purposes of a disciplinary sanction, he acted "intentionally." Instead, he asserts that he acted either "knowingly" or "negligently," so a lesser presumptive sanction is appropriate.[20] Resp't's Br. at 19. For the reasons stated above, namely that Vanderveen's guilty plea establishes that he acted "intentionally," that his conduct constituted "dishonesty" in violation of RPC 8.4(c), and because his conduct and his felony conviction are injurious to the reputation of the legal profession, application of standard 5.11(b) is appropriate.

---

[20] Vanderveen has been suspended since July 2005, pending resolution of this case. He argues that suspension is the appropriate sanction and seeks credit for the time he has been suspended. Resp't's Br. at 19.

*E. Aggravating and Mitigating Factors*

¶33 Once we determine the presumptive sanction, we consider whether the Board properly found and weighed aggravating and mitigating factors to determine if they merit departure from that sanction. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 342, 157 P.3d 859 (2007).

¶34 The hearing officer and the Board found one aggravating factor: Vanderveen's substantial experience in the practice of law. The hearing officer also found five mitigating factors: absence of a disciplinary record, full and free disclosure, remorse, character or reputation, and one related to Vanderveen's state of mind resulting from his guilty plea. The Board struck the latter two mitigating factors. Vanderveen alleges these modifications were in error and seeks the mitigator of "other penalties and sanctions."

¶35 First, the WSBA argues that the Board struck the hearing officer's finding of good character or reputation because the record does not contain evidence to support that finding. In support of this mitigator, Vanderveen cites to his own testimony that he was a pro tempore judge and the contents of an agreement and order of censure from the Commission on Judicial Conduct based on his felony conviction.[21] Resp't's Br. at 22-23; Ex. 101. Although Vanderveen correctly quotes the agreement with the commission as saying he had no prior history of judicial misconduct and he acknowledges and accepts responsibility for conviction, Vanderveen fails to mention that the agreement also states his actions detrimentally affected the integrity of the judiciary, undermined the public's confidence in the administration of justice, and violated the rules of judicial con-

---

[21] Based on his felony conviction, the commission found Vanderveen violated canons 1 and 2 of the Code of Judicial Conduct. Vanderveen entered a stipulation, agreement, and order of censure with the commission in which he agreed, among other things, not to seek judicial or quasi-judicial office without commission approval.

duct. *See* Ex. 101. Viewed in its totality, this agreement is hardly evidence of good character or reputation. Thus, neither Vanderveen's service as a pro tempore judge nor his agreement with the commission amounts to substantial evidence of his good character or reputation. The Board properly struck this mitigator.

¶36 Second, the Board struck the hearing officer's mitigating factor relating to Vanderveen's conviction by a guilty plea, rather than by a jury. In summary, the hearing officer stated that because Vanderveen was convicted by a plea agreement rather than by a jury given an instruction specifically defining the term "willful" as "with knowledge of the reporting requirement [and] intent to commit the crime" as *Ratzlaf* defines it, Vanderveen did not plead to acting "intentionally." CL 40. Based on our analysis above, the Board properly struck this mitigating factor because it conflicted with the hearing officer's finding that Vanderveen acted "intentionally" based on *Ratzlaf*.[22] FF 30.

¶37 Third, Vanderveen now seeks the mitigator of "other penalties and sanctions." He argues that the three months he served in prison, his time on house arrest, as well as his other sanctions[23] and the adverse publicity he suffered as a result of some unproven conspiracy charges against him constitute the mitigating factor of "other penalties and sanctions." Resp't's Br. at 23.

¶38 In previous cases, we have stated that the criminal justice system enforces the criminal code and " 'bar discipline supplements the work of the criminal courts in order to maintain respect for the integrity of legal institutions.' " *In re Perez-Pena*, 161 Wn.2d at 835 (quoting *In re*

---

[22] At oral argument, counsel stated that Vanderveen did not make an *Alford*-type plea, which could indicate that Vanderveen protested the mental state required for his conviction. *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). There is also no indication in the record that Vanderveen failed to understand his plea agreement: he has been a practicing attorney for many years, and he was also represented by competent legal counsel.

[23] He paid $10,000 in fines, voluntarily returned over $20,000 to the government, and received the aforementioned censure by the Commission on Judicial Conduct.

*Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 771-72, 801 P.2d 962 (1990)). However, we have also stated that the central aim of the disciplinary system is to protect the public and deter attorney misconduct, while the criminal justice system seeks to punish offenders for violations of the criminal code. In keeping with the aim of the disciplinary system, we have considered " 'sanctions already imposed' " as a mitigating factor. *In re Perez-Pena*, 161 Wn.2d at 835 (quoting *In re Curran*, 115 Wn.2d at 773). However, these sanctions have usually included disciplinary sanctions, such as interim suspensions, rather than prison sentences imposed as punishment by the criminal justice system. *See In re Perez-Pena*, 161 Wn.2d at 835. For these reasons, Vanderveen's criminal sentence is not a mitigator.

¶39 Vanderveen's arguments regarding the censure he received from the Commission on Judicial Conduct and the adverse publicity resulting from the conspiracy charges are sparse. He cites no cases to support a finding of judicial censure as a mitigator, and he parenthetically cites only one case where the hearing officer determined that adverse publicity constituted a mitigating factor. Resp't's Br. at 23; *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 960 P.2d 416 (1998). Here, neither the hearing officer nor the Board found adverse publicity as a mitigator. We agree.

¶40 Although three mitigators and only one aggravator exist in this case, when we consider all the mitigators together, they are not sufficiently compelling to justify departure from the presumptive sanction.

## F. Unanimity and Proportionality

¶41 Finally, we determine whether the proportionality of the sanction and the degree of unanimity among Board members justify departure from the Board's recommendation. Where recommendations differ, we will generally give more weight to the Board's sanction recommendation than the hearing officer's, based on the Board's unique experience and perspective in the administration of sanctions. *In re Cohen*, 150 Wn.2d at 754.

¶42 In proportionality review, we compare the case at hand with similarly situated cases in which the same action was either approved or disapproved. The attorney facing the discipline bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed. *In re Cohen*, 150 Wn.2d at 763.

¶43 Here, the Board was almost unanimous in its decision. Its vote was 10 to 1 in favor of disbarment. Given the degree of deference to which the Board is entitled, the high degree of unanimity,[24] and the Board's expertise in disciplinary matters, we hesitate to grant a lesser sanction.

¶44 As to proportionality, while Vanderveen contends that his sanction is disproportionate to his misconduct, he concedes "no directly analogous cases [exist] to guide the Court in determining the proportionality of the sanction." Resp't's Br. at 22. The WSBA argues that this fact bars Vanderveen from raising proportionality as an issue. WSBA Answering Br. at 42. The absence of disciplinary cases involving Title 31 felony convictions does not prohibit Vanderveen from raising the proportionality as an issue. Rather, he must persuasively argue his case based on existing precedent sufficiently analogous to his disciplinary case. He fails to do this.

¶45 In arguing that his sanction is disproportionate to his misconduct, Vanderveen correctly observes that Washington has no automatic felony disbarment rule and identifies several cases where attorneys have committed felonies resulting in less than disbarment. However, he provides little analysis of them. Resp't's Br. at 21-22. Three of the cases he cites are readily distinguishable from

---

[24] We have found sufficient unanimity in cases where the Board voted overwhelmingly in favor of a particular sanction. *See, e.g., In re Cohen*, 150 Wn.2d at 763 (Board voted 11 to 1 in favor of suspension. Noting the high degree of unanimity among Board members, we upheld the recommendation.).

Vanderveen's case as they do not present sufficiently analogous facts.[25]

¶46 Vanderveen cites *In re Plumb*, 126 Wn.2d 334, which is roughly analogous to his case. In that case, an attorney recently admitted to the bar was convicted of the felony of first degree theft for willful failure to report an income increase for the receipt of welfare funds. The hearing officer recommended the presumptive sanction of disbarment. In a divided vote of 6 to 5, with 4 members recommending disbarment, the Board revised the sanction to a three-year suspension conditioned on Plumb's providing full restitution of the overpayment in welfare benefits he received. Considering the goals of deterrence and protection of profession, we reasoned that although disbarment would act as a deterrent, it would do little else. We further found that two similar cases, involving theft in amounts ranging from $4,500-$10,000, merited only suspension, and were sufficiently analogous to Plumb's theft of approximately $7,000. We affirmed the Board.

¶47 *In re Plumb* is distinguishable. Here, the Board's vote is not significantly divided: it is overwhelmingly in favor of disbarment. Additionally, Vanderveen was not a new admittee to the bar; he had been a practicing attorney for approximately 16 years when he pleaded guilty to the felony. Finally, contrary to Plumb's case, no sufficiently similar cases exist to conclusively demonstrate that disbarment is a disproportionate sanction. Therefore, Vanderveen fails to meet his burden of proving that his sanction is disproportionate to his misconduct.

## CONCLUSION

¶48 We find that the Board properly struck or amended the hearing officer's findings and correctly determined that

---

[25] *In re Curran*, 115 Wn.2d 747 (attorney committed vehicular homicide, and we determined the presumptive sanction was two-year suspension); *In re Disciplinary Proceeding Against McLendon*, 120 Wn.2d 761, 845 P.2d 1006 (1993) (attorney converted client funds, and we found the extraordinary mitigator of bipolar disorder merited departure from presumptive sanction of disbarment and suspended him with conditions); *In re Disciplinary Proceedings Against Seijas*, 52 Wn.2d 1, 318 P.2d 961 (1957) (attorney convicted of fraudulent tax evasion, a crime of moral turpitude warranting disbarment).

disbarment is the presumptive sanction. Given the deference to which the Board's recommendation is entitled, the Board's overwhelming vote in favor of disbarment, the lack of significant mitigating factors, the seriousness of Vanderveen's felony conviction, and its adverse reflection upon the integrity of the legal profession, we hold disbarment is the appropriate sanction.

ALEXANDER, C.J., and MADSEN, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶49 SANDERS, J. (dissenting) — The appropriate sanction for an attorney convicted of willful failure to file a form with the Internal Revenue Service (IRS) is suspension from practice, as this court's precedent indicates. Precedent also indicates a willful failure to file does not constitute dishonesty for the purposes of an attorney disciplinary proceeding. I dissent.

I

¶50 The task of this court in a proportionality review is to analyze whether a presumptive sanction is proper by comparing the case at hand with other similarly situated cases in which the same sanction was approved or disapproved. *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 95, 667 P.2d 608 (1983). The sanction must not depart significantly from sanctions imposed in similar cases. *Id.*

¶51 A. Mark Vanderveen was convicted of willful failure to file a report of receipt of currency of more than $10,000 as required by 31 U.S.C. §§ 5331(a) and 5322(a). He was sentenced to 3 months in prison and 90 days' home detention. Although there appears to be no Washington attorney discipline case that discusses that particular section of the United States Code, this court has on several occasions considered the appropriate sanction for attorneys convicted of the similar crime of willful failure to file federal tax

returns. For the purposes of a proportionality review, our rulings in disciplinary cases involving the crime of willful failure to file a tax return are appropriate for comparison because the willful failures to file either a currency report or a tax return are both crimes of omission (in that the criminal act is one of knowing inaction), they both have willfulness elements, they both involve filing similar documents to the same agency (the IRS), and they both carry similar sentences.

¶52 The failure to file an income tax return usually leads to suspension from practice. *In re Disciplinary Proceeding Against Witteman*, 95 Wn.2d 936, 937-38, 631 P.2d 961 (1981). Filing false and fraudulent tax returns, as Vanderveen noted in his brief, has resulted in disbarment. *Id.* at 937 (citing *In re Disciplinary Proceedings Against Seijas*, 52 Wn.2d 1, 318 P.2d 961 (1957)). In *Witteman*, the respondent attorney pleaded guilty to failure to file a federal income tax return and was fined and sentenced to six months' work release. Based on the guilty plea and on a charge that the attorney had intentionally failed to represent one of his personal injury clients, the hearing officer recommended a suspension of 30 days. On review, this court explained it normally would impose a 6-month suspension for willful failure to file a tax return but found in mitigation the attorney had filed his returns and paid all back taxes owed before the criminal charges were filed, and held the 30-day suspension was proper. *Id.*

¶53 Other cases of record show the appropriate range of sanctions for a willful failure to file federal tax returns runs from reprimand to a six-month suspension. In *In re Disciplinary Proceedings Against Molthan*, 52 Wn.2d 560, 327 P.2d 427 (1958), the respondent attorney was fined and sentenced to six months in prison after pleading nolo contendere to the charge of willful failure to file a federal tax return. *Id.* at 561. The bar association recommended disbarment, but this court held the appropriate sanction was to reprimand the attorney. *Id.* at 561, 565. This court, examining cases from other jurisdictions, noted that disbar-

ment was appropriate only where the attorney had a " 'purpose of cheating the Federal Government' " and had a " '*corrupt and criminal motive.*' " *Id.* at 564 (some internal quotation marks omitted) (quoting *In re Burrus*, 364 Mo. 22, 24, 258 S.W.2d 625 (1953); *In re Conduct of Means*, 207 Or. 638, 639, 298 P.2d 983 (1956)).

¶54 The attorney in *In re Disciplinary Proceedings Against English*, 64 Wn.2d 129, 130, 390 P.2d 999 (1964), failed to file tax returns for four years, pleaded guilty to a failure-to-file charge, and was fined and sentenced to six months' imprisonment. The bar association had sought a 90-day suspension, but this court held a reprimand was the appropriate sanction because the respondent had already voluntarily left the practice of law. *Id.* at 134.

¶55 In *In re Disciplinary Proceeding Against Caughlan*, 61 Wn.2d 557, 558, 379 P.2d 189 (1963), an attorney had been convicted by a jury of willful failure to file tax returns and had been fined and sentenced to eight months' imprisonment. This court affirmed the disciplinary board's recommendation of a 30-day suspension. Similarly, in *In re Disciplinary Proceeding Against Greiner*, 61 Wn.2d 306, 378 P.2d 456 (1963), the attorney had pleaded guilty to two counts of failure to file and had been sentenced to three months' imprisonment. This court held a 90-day suspension was appropriate because the attorney had willfully failed to file tax returns for eight consecutive years. *Id.* at 313. In *In re Disciplinary Proceedings Against Carson*, 61 Wn.2d 304, 378 P.2d 450 (1963), an attorney failed to file tax returns for 11 consecutive years. He pleaded guilty to one count of failure to file and was sentenced to four months' imprisonment. This court held the appropriate sanction was a six-month suspension. *Id.* at 305 (citing *In re Disciplinary Proceeding Against Case*, 59 Wn.2d 181, 367 P.2d 121 (1961) (attorney fined and imprisoned for four months after failure-to-file conviction; suspended six months for conviction and for unprofessional conduct in an estate matter)).

¶56 This court has not affirmed a recommendation to disbar an attorney for a failure-to-file conviction, although

it has disbarred an attorney for filing false and fraudulent tax returns. *See Seijas*, 52 Wn.2d at 1. In *Seijas*, the respondent attorney was convicted of filing fraudulent income tax returns and sentenced to five years' imprisonment. This court held the crime of falsely and fraudulently filing returns was an act of dishonesty and moral turpitude and that disbarment was warranted. *Id.* at 3-4.

¶57 Vanderveen pleaded guilty to the crime of willful failure to file a currency report for the receipt of more than $10,000 cash. He was sentenced to 3 months' imprisonment and 90 days' home detention. The majority's affirmation of the sanction of disbarment departs significantly from the sanctions imposed in other, similar cases. *See Noble*, 100 Wn.2d at 95. Unlike the attorney in *Seijas*, who filed fraudulent returns and was sentenced to five years' imprisonment, Vanderveen was convicted of willful failure to file and given a 3-month sentence. As in the willful failure to file cases of *Molthan*, 52 Wn.2d 560 (6-month sentence, disciplinary board recommended disbarment, this court reprimanded); *Caughlan*, 61 Wn.2d 557 (8-month sentence, given 30-day suspension from practice); *Greiner*, 61 Wn.2d 306 (3-month sentence, 90-day suspension from practice); and *Carson*, 61 Wn.2d 304 (4-month sentence, 6-month suspension), the appropriate sanction for a failure-to-file type of crime ranges from reprimand to suspension. An attorney must have the "corrupt" purpose of seeking to "cheat the Federal Government" in order for disbarment to be warranted, and that "corrupt" purpose must be manifested by an affirmative act such as a fraudulent filing.[26] Even absent mitigating factors, the appropriate proportional sanction is suspension. The majority errs in affirming the sanction of disbarment.

II

¶58 The majority likewise errs in affirming the disciplinary board's finding that Vanderveen's conviction is conclu-

---

[26] *See Witteman*, 95 Wn.2d 936; *Molthan*, 52 Wn.2d 560; *Seijas*, 52 Wn.2d 1.

sive evidence of "dishonesty." Since the only charge before us concerns Vanderveen's conviction for willful failure to file a currency report, any dishonesty must touch on the failure to file itself. In Washington, the failure to file a tax return is not itself sufficient to establish dishonesty or fraud for the purposes of an attorney discipline proceeding. An affirmative false or fraudulent act is required. *See Seijas*, 52 Wn.2d at 2 (citing *Tseung Chu v. Cornell*, 247 F.2d 929, 933 (9th Cir. 1957)); *Chanan Din Khan v. Barber*, 147 F. Supp. 771, 775 (N.D. Cal. 1957); *Molthan*, 52 Wn.2d at 563; *Witteman*, 95 Wn.2d at 937. As discussed *supra*, failure to file a tax return and failure to file a currency report are similar in that both have willfulness elements, both carry similar sentences, and both involve a knowing failure to act rather than an affirmative false act. The majority posits Vanderveen's receipt of two cash payments, placement of those payments in a personal safe rather than in the bank, and failure to file a currency report together constitute dishonesty. Majority at 608, 610. But this case should not be confused with one where the charges include a misuse of client funds or a commingling, or where the attorney is accused of receiving a bribe, kickback, or otherwise wrongful payment, as no such charges are present here. "Dishonesty" and "concealing" are not elements of the crime of failure to file a currency report, and Vanderveen's conviction is not itself evidence of either. The majority errs in conflating Vanderveen's receipt of the cash with his failure to file a report regarding that cash. The sole disciplinary charge before us stems from Vanderveen's conviction for failure to file a report of receipt of cash, and not for having wrongfully received, concealed, or misused that cash. Vanderveen's failure-to-file plea formed the basis of the conviction, the failure-to-file conviction forms the basis of the disciplinary charge before us, and as our case law indicates, any dishonesty, misrepresentation, or fraud must therefore be in the context of the failure to file itself.

¶59 In cases where attorneys willfully failed to file for many consecutive years, it could be argued that the attor-

neys were acting dishonestly by concealing their income from the government. Yet this court has not found dishonesty, fraud, or misrepresentation in such cases absent an affirmative act to deceive the federal government. Here, there is no evidence that Vanderveen attempted to deceive the federal government. In fact, the record indicates that Vanderveen first discovered the currency reporting requirement well after receiving the cash payments, in a phone call which was, unbeknownst to him, being recorded by federal investigators. Ex. 126B.[27] Without an affirmative, deceptive act by Vanderveen toward the federal government (i.e., a false filing), under our case law a failure to file is not itself "dishonest" for disciplinary proceeding purposes, and the majority errs in affirming the disciplinary board's finding otherwise.

¶60 Vanderveen's conviction was not for a crime that involved dishonesty in that by failing to file there was no affirmative deceptive act toward the government, and as precedent indicates the appropriate proportional sanction for misconduct of Vanderveen's type is suspension from practice, I respectfully dissent.

---

[27] The majority argues that it was appropriate for the Washington State Bar Association to be permitted to introduce the circumstances of the cash payments as evidence Vanderveen was intentionally concealing them, but that it was proper to disregard transcripts from a secret wiretap indicating the first time Vanderveen discovered the reporting requirement was after he had already received the cash payment. Majority at 607-10. Although it is true that an attorney cannot contradict the essential elements of his conviction in a disciplinary proceeding, an attorney is permitted to offer evidence of mitigating circumstances. *In re Disciplinary Proceeding Against Perez-Pena*, 161 Wn.2d 820, 831, 168 P.3d 408 (2007) (citing The American Bar Association's comments to the *Model Rules for Lawyer Disciplinary Enforcement* (2007)). Here, although Vanderveen cannot use the transcript to challenge the willfulness element of the crime to which he pleaded guilty, the transcript should be properly considered in the context of the disciplinary board's "dishonesty" finding.